# Jones's Estate.

211    364
137SC  412

*Wills—Legacies—Revocation—Subsequent divorce—Divorce.*

A legacy in the words, "one-third to my wife Mary Brown Jones" does not lapse, although the wife subsequently to the date of the will, at her own instance, obtains a divorce a vinculo matrimonii. In such a case the word "wife" is descriptive only, and does not import a condition that the beneficiary shall remain testator's wife. The Act of June 4, 1879, P. L. 88, which provides that a will is to be construed as of the death "with reference to any real or personal estate embraced in it," does not apply, inasmuch as the act has no application to beneficiaries and their condition. As to them the will speaks as of its date.

A bequest "to my wife Mary Brown Jones" is not revoked by implication by reason of an absolute divorce subsequently procured by the wife at her own instance.

MITCHELL, C. J., dissents.

Argued Jan. 31, 1905. Appeal, No. 169, Oct. T., 1904, by Fidelity Title & Trust Co., guardian, from decree of O. C. Allegheny Co., March T., 1904, No. 91, dismissing exceptions to adjudication in estate of Thomas Mifflin Jones, Jr., deceased. Before MITCHELL, C. J., DEAN, FELL, POTTER and ELKIN, JJ. Affirmed.

Audit of executor's account.

The account showed a balance for distribution of about $600,000.

By a stipulation filed the following facts appeared:

Thomas M. Jones, Jr., the decedent, on April 9, 1896, married Mary E. Brown (now Speer).

One child, a son, Thomas M. Jones, 3d, was born to them, who has for a guardian the Fidelity Title & Trust Company.

On February 6, 1900, Mary Brown Jones filed her libel in divorce against the said Thomas M. Jones, Jr. On September 19, 1900, the court entered its decree divorcing them.

Thomas M. Jones, Jr., did not marry after the entry of the decree, and died on May 17, 1902.

On October, 8, 1902, Mary Brown Jones married Charles E. Speer, Jr., and assumed the name of Mary Brown Speer.

The will of Thomas M. Jones, Jr., dated April 24, 1899, probated May 29, 1902, is as follows:

" I, Thomas Mifflin Jones, Jr., do make this my last will and testament, hereby revoking any and all wills heretofore made by me.

" I direct that my funeral expenses and all debts be promptly paid, that my estate be divided as follows, one-third to my wife Mary Brown Jones and the balance to my son Thomas Mifflin Jones. I appoint William C. Moreland, Jr., in whom I have great confidence, my executor, and direct that he shall receive the sum of five thousand dollars for his services, and that he shall have reasonable time for the division of my estate."

The will was made two months after his wife had withdrawn from his house.

The auditing judge, MILLER, J., filed the following opinion:

The question presented is new; careful research shows no adjudication by the Supreme Court of this state under the same conditions.

Counsel for the guardian contend that, owing to the changed relations of the testator after his will was made, and the decree of divorce was entered against him, absolutely severing and making null and void the marriage relationship, that the law implies a revocation of his will as to this bequest; that the presumption is that he could not have intended the disposition of

his property, made before his relations with his then wife were changed, to still continue after the relations by decree of absolute divorce were severed; that the bequest of one third of his estate was not to Mary Brown Jones as an individual only, but to Mary Brown Jones, his wife; that the bequest so made to her was by reason of the marriage relation.

The contention of counsel for the claimant is that as to the identification of the beneficiary the will speaks from its date when the claimant was testator's wife; that the word "wife" identifies the beneficiary, but does not imply any condition; that the divorce did not render the legacy either void or lapsed; and that the lapse of time between the date of divorce and testator's death, about twenty months, without changing the will is conclusive of his fixed intention to confer upon her the benefit given by the will.

Implied revocation of wills is an ingrafted heritage from the common law; when the conditions after the making of the will produce a change in the testator's previous obligations and duties, there may arise a reasonable presumption of a change of intention in his mind: 4 Kent's Com. 54.

The doctrine is stated and adopted in Young's Appeal, 39 Pa. 115, as follows: "If the testator's circumstances be so altered that new moral testamentary duties have accrued to him subsequently to the date of the will, such as may be presumed to produce a change of intention, this will amount to an implied revocation. . . . This principle gives the fundamental reason of all positive rules of law we have on the subject. . . . The positive rules are given sometimes by statute and sometimes by judicial decision."

But the fact in this case involved an antenuptial settlement, and the subsequent birth of issue after date of the will. The revocation of the will under the facts does not apply here.

Lansing v. Haynes, 95 Mich. 16 (54 N. W. Repr. 699) is the leading case apparently sustaining the guardian's contention, and is worthy of extended notice. The parties were married in 1864; the wife obtained an absolute decree of divorce in 1889; the husband died in 1891; they executed mutual wills in 1881, identical in language, each devising all their property to the other. She by agreement became custodian of both wills until the divorce, when she destroyed hers and she re-

tained his, which action was unknown to him. In 1889, pending the divorce suit, she and he made a division of his property, he conveying to her certain real estate, she releasing her interest in the remainder to him, at the same time an agreement was executed by them in which he conveyed to her certain personal property. She released him from all demand of every sort, agreeing to pay her own expenses in the divorce proceedings, it being stated in the above-recited agreement that it and the deeds recited were intended as a property settlement between them.

After his death she probated his will and under it claimed the husband's estate. Her claim was denied, the court saying, inter alia: "The natural presumption arising from these changed relations is the reasonable one, and the one which in law implies a revocation. . . . To hold the will unrevoked under these circumstances would be repugnant to that common sense and reason upon which the law is based."

The foregoing is one of the few adjudicated cases involving the effects of a divorce upon the precise point at issue; but it differs from this that there had been a settlement of the property rights of the parties; the court, after commenting on the effect of divorce and change of relation, saying: "It is not, in my judgment, the natural presumption that after the testator had settled with her, had conveyed to her a good share of his property as well as their marital relations, the will executed nearly ten years before should remain in force and operate upon his death as a conveyance of the remainder of his property to her to the exclusion of his heirs."

Our statutes provide for the revocation of wills; as to real estate by some other will or codicil in writing, or other writing declaring the same, by burning, canceling, obliterating or destroying the same; as to personal estate in the same manner, except in addition by a noncupative will, made under the same circumstances, committed to writing in the lifetime of the testator, so read to and allowed by him; and by the marriage, subsequent to the making of a will, of a man leaving a widow and child or widow or child or children; and by the subsequent marriage of a single woman who had made her will. The statutes are silent as to the revocation of wills in any other manner. The language that " no will shall be revoked " ex-

cept as therein provided indicates a strong implication that any other revocation is prohibited.

In Walker v. Hall, 34 Pa. 483, the court, after declaring the well-recognized rules of revocation, continues : " It is clear, therefore, that all our rules in such cases are statutory, established by the legislature, by which the common law has been either repealed or altered or enforced by positive legislative sanction, and therefore not open to the doctrine of implied presumption."

In Heise v. Heise, 31 Pa. 246, is said : " Yet under the 13th section, that which was once a perfect will must remain such unless repealed, altered or destroyed, in some one of the modes designated in the act. Those modes are exclusive of all others." So also Dixon's App., 55 Pa. 424.

There is no doubt that as to the beneficiary intended this will speaks from its date : 2 Jarman on Wills, page 320 ; Gardner on Wills, page 432 ; Anshutz v. Miller, 81 Pa. 212 ; this person was Mary Brown Jones.

The words " my wife," prefixed to the name, does not imply any condition : Theobald on Wills, page 210. Testator did not stipulate that she should continue to be his wife while he lived and his widow upon his death as a condition precedent. The name will prevail if there is a person fully answering to it, even though there be a description and no one answers to it. " The mere fact that a gift is made to a named legatee in a certain character, as for instance my wife A, does not avoid the legacy, if the legatee does not happen to fill the description " : Theobald on Wills, page 214. In Bullock v. Zilley, 1 N. J. Equity, 489, testator directed interest to be paid to Thomas Bullock and Rebecca, his wife. They were divorced after testator died, held the word wife was descriptive, designating the person, and that Rebecca took under the will. Judge PENROSE in Mellon's Estate, 28 W. N. C. 120 : " We may conjecture, but we cannot be certain that the inducing cause of the provision for this claimant was that she was testator's wife ; we do know she is the individual in testator's mind when the will was executed."

The case of Charlton v. Miller, 27 Ohio, 298, arose under the provisions of testator's will bequeathing to " my intended wife Elizabeth Jennings the sum of one thousand dollars, to be paid

to her by my executors one year after my decease." The execution of the will was followed by the marriage of testator with the legatee; eight months thereafter she deserted him; five years later he obtained a divorce on the ground of such desertion, and he died five years after the divorce. Held in awarding the legacy to the claimant, that " undoubtedly the contemplated marriage of the parties and a desire to make a provision for the plaintiff as - his wife, were the prompting causes of the will, but whether they were the only motives we cannot tell. . . . . To defeat the bequest we must then not only add to the will conditions, that are neither expressed nor necessarily implied therein, but must rebut the presumption against any intent to revoke the will, arising from the testator's acquiescence (for nearly five years after he was abandoned by his wife before he obtained a divorce)."

In Sharpe's Estate, 15 W. N. C. 419, testator created a trust for his son, he to receive the interest during life, and in case of his death for the use. and benefit of his wife Ada and child, or children, in the same manner until the children attained lawful age, when the corpus was to be divided equally between the wife Ada and children, and in case of no surviving children the half part of the corpus to the son's wife Ada; the other half to testator's surviving children. The will was dated October 5, 1871, at which time the testator was living with his son and the son's wife Ada; on October 19, 1872, in the lifetime of the testator, upon the application of the wife, they were divorced a vinculo, having no children ; the son was remarried and died leaving a widow, Emma and child ; the divorced wife Ada remarried and was living with her second husband at the time of the adjudication.

The auditing judge, HANNA, P. J., awarded one half the corpus to the legatee Ada, holding that the effect of the divorce was immaterial, referring to Burton v. Sturgeon, 34 Law Times Rep. (N. S.) 706 ; Fitzgerald v. Chapman, 33 Law Times Rep. (N. S.) 587 ; Bullmore v. Wynter, 48 Law Times Rep. (N. S.) 309. The court further stating that the testator survived the divorce, making no alteration in his will, that the divorce did not convert the legacy into a lapsed or void legacy. The court by Judge PENROSE affirmed the adjudication on an additional

and different theory, but it did not disturb the conclusions stated by the auditing judge.

In the recent case of Brown v. Grand Lodge A. O. of U. W., 208 Pa. 101, the facts as stated in the opinion are: John P. Brown, in October, 1877, became a member of a subordinate lodge of the Ancient Order of United Workmen, and had a benefit certificate insuring his life in the sum of $2,000, payable at his death to Mattie Brown, his wife. In 1893 she obtained an absolute divorce from him, and in the same year he married Annie Z. Whaley. He died December 22, 1901, leaving to survive his widow, Annie Z. Brown, with one child; three children of his first wife, Mattie Brown, the beneficiary, who also survived, and who had possession of the benefit certificate; no change was made in the beneficiary. The decedent had contributed toward the support of his divorced wife and her children until his death.

The judgment in favor of the divorced wife, the beneficiary named, was sustained. True, the facts are somewhat different and the adjudication of the rights of the parties in passing upon the charter and laws of this beneficial organization are not similar to the questions raised under this will, still this similarity does exist. At the time she was made beneficiary she was his wife, she was within the class recognized by the laws of the society. At the time of his death she was not his wife. The divorce severed their relations. Brown could have changed his beneficiary; that he did not had its weight in the decision of the court, Mr. Justice MESTREZAT saying: "It is manifest that John P. Brown intended that his first wife should continue to be the beneficiary after they had been separated by the divorce proceedings. . . . The divorce was granted eight years before his death, yet he allowed these years to go by without a surrender of the policy and a change of the beneficiary, or without disclosing any desire to make a change. . . . Under the circumstances it is evident that he never intended or desired to exercise his power of appointment, and thereby deprive his first wife of the benefit of the policy issued by the defendant company."

The contention that the divorce absolutely severed the marriage relations is correct; if this claim were based on that relation alone it would be summarily dismissed; but it arises

from an entirely different cause; its basis is the deliberate, mature act of the testator made when the end of the marriage relation had begun; an act that he continued to ratify during the months that the divorce proceedings were pending, in every step of which he had notice, which act he continually reaffirmed during the long period after the divorce, ending only with his death.

It does not follow that because the divorce made these parties as strangers to each other, so far as their marital rights were concerned, that, therefore, the testator's deliberate act in making this devise, which did not necessarily depend on the marriage relation, a void or lapsed devise.

The facts here do not bring this case within the rule, that the law works a revocation where the changed relations raise a reasonable presumption of a change of intention in the testator's mind.

To strike down his expressed intention, and substitute therefor a presumption of his change of intention, would lead to a result unwarranted in principle or precedent.

Why the testator did not alter his will, cannot be known. He had almost two years in which to change it. Although divorced, the devisee was not a stranger to him or to his blood. She was the mother of his only child. Both remained unmarried to his death; her subsequent marriage did not, so far as the record shows, enter into any consideration and is immaterial. There was no change or alteration in his estate when the will took effect; the principal object of his bounty, his only son, who takes the remainder, by far the greater portion, of his estate, still continued as the chief object of care.

His will made after the separation taking effect at his death is presumptive legal evidence that he was satisfied and so intended the disposition of his property. He could, after the divorce, have made a new will with the same devise to the same person or any other devise to any other person; that he did not do so is persuasive that he intended the devise to Mary Brown Jones, his former wife, the mother of the child born to them both to remain in effect.

In Schouler on Wills, sec. 427, it is said, " In short revocation of a particular will by mere inference of law or presumption is limited to a very few instances in our modern practice ; whilst

on the other hand, changes in the condition of the testator's affairs or through the mortal chances to which he and his beneficiaries are exposed may work out a very different settlement and distribution of his estate after his death from what the will purported to arrange.    Modern legislation itself repudiates in England and many of our states the whole theory of presumed intention to revoke on the ground of an alteration in circumstances ; and what is left of that theory aside from such statutes it would be difficult to say."

To hold under the facts in this case that the divorce revoked this bequest would not be in accordance with statutory regulation, and would be extending the doctrine of an implied revocation beyond any authoritative adjudication, and would be contrary to the express and implied intention of the testator.

On exceptions, OVER, J., filed the following opinion :

If the gift by the testator to his wife Mary Brown Jones of one third of his estate was to her in her marital relation as she was not his wife at his death she could not take.    Under the authorities cited by the auditing judge, however, it seems that the words " my wife " used by the testator in connection with her name, are descriptive only of the beneficiary, they do not imply that the gift was subject to the condition that she should sustain that relation to him at his death, and it is to be construed as being made to her in her individual capacity.

The only change in testator's relation from which an implied revocation might be inferred is that the marriage relationship between him and Mary Brown Jones was dissolved prior to his death.    But if the gift was to her individually that would not affect her right to take, and as no new moral testamentary duties accrued to him subsequently to the date of the will, no presumption of a change of intention on his part arises, and therefore there is no implied revocation.

For these reasons and others given in the opinion of the auditing judge the exceptions must be dismissed.

HAWKINS, P. J., filed the following dissenting opinion :

If Mr. Jones had died intestate it must be conceded that this claimant would have had no standing here.    Her right to claim in distribution would have depended on the continuance of the

marital relation, and that had been terminated by her act as completely as though she had died before Mr. Jones. The law gave her the option of qualified or absolute divorce, and having chosen the latter she would voluntarily have relinquished her whole interest in his estate. The statute of divorce prescribes that upon the dissolution of marriage, " all and every the duties, rights and claims accruing to either of the parties at any time theretofore in pursuance of said marriage shall cease and determine " and to this extent is part of the law of distribution. And why not apply this broad principle to wills ? Because, says counsel, there can be no implied revocation without statutory prescription ; and divorce is not prescribed. But it is fully established that change of circumstances raises a presumption of change of intention and works a revocation of a will ; and this presumption is said to be so strong that it may not be rebutted by parol evidence, on the ground that this would be productive of the evils which were intended to be averted by the statute of fraud : Marshall v. Marshall, 11 Pa. 430. There are subordinate reasons everywhere, said the court in Young's App., 39 Pa. 115, varying the rule according to the laws of descent. The positive rules are given sometimes by statute, and sometimes by judicial decision ; and the most positive of them are sometimes changed merely incidentally by a change in the laws of descent. For the law does not do or require vain things. It has accordingly been held again and again that testator's sale of a thing specifically given is an implied revocation pro tanto notwithstanding the absence of statutory prescription : 1 Williams on Executors, 242. So it was held in Carey's App., 75 Pa. 201, that revocation may be implied from change of domicil. No one can doubt that refusal to accept a legacy will work revocation pro tanto : Bryce's Est., 194 Pa. 135. And so in Lee's Est., 207 Pa. 218, it was held that a decree of divorce implied the revocation of a coverture trust, upon the ground that " the law has severed the matrimonial bond as effectually as death could have done." If this claimant had died before Mr. Jones there can be no doubt that the gift must have failed for she would not have been within the statute of lapse ; and divorce is the equivalent of death. If divorce be the equivalent of death in such will, Flory v. Becker, 2 Pa. 470, it must be so in every will in which marital rights

are involved. "Implied revocations," said Chancellor Kent (4 Comm. 521), "are founded upon the reasonable presumption of an alteration of the testator's mind arising from conditions since the making of the will, producing a change in his previous obligations and duties. . . . There is not, perhaps, any code of civilized jurisprudence in which this doctrine of implied revocation does not exist, and applied when the occurrence of new social relations and moral duties raise a necessary presumption of a change of intention in the testator." It is immaterial, said the court in Young's App., 39 Pa. 115, "whether this principle of the common law was derived from the Roman law, or from our instincts of justice, certainly it is now a legitimate element of our common law, and we would not have received it but for those instincts. The Romans received it before us, because they were before us and because they too were human." It seems clear, therefore, that there may be implied revocation of wills outside of statutory prescription.

The pivotal question, then, is whether or not the change of conditions since the making of this will produced such a change in testator's previous moral obligations and duties as raises a reasonable presumption of alteration of his mind and implies revocation of the bequest which he had made to his wife? If the gift was made because of the existence of the marital relation, divorce would certainly take away the reason for it; and without the reason which inspired, the legatee could have no equity to claim it. It is immaterial whether her husband made a will or not; for her application having been a voluntary and absolute renunciation of "all and every the duties, rights and claims accruing . . . . in pursuance of the marriage," she took the risk and should abide the consequence. It is safe to assume that the gift would not have been made if the beneficiary had not stood in the relation of wife. It may be that Mr. Jones's misconduct was so gross as to justify his wife leaving him, and that under the spur of remorse he made the will as a peace offering; but it would be asking too much of human nature to expect the husband to make such a gift in anticipation of his wife's application for divorce and remarriage. "The natural presumption arising from these changed relations," said the court

in Lansing v. Haynes, 95 Mich. 16 (54 N. W. Repr. 699), "is the reasonable one, and the one from which the law implies a revocation. The question is not to be determined by a possible presumption, but by the reasonable presumption. The possibility, therefore, that the deceased might have desired that the remainder of his property should go to his divorced wife, cannot be considered in determining the question of implied revocation in this case. Such disposition of his property would be unusual, and contrary to common experience," and the grounds of divorce may be such as to make her claim "repugnant to that common sense and reason upon which the law is based."

There is obviously an essential difference between a gift to "my wife Mary Brown Jones" and a gift to "Mary Brown Jones" without more. Irrespective of technical rules no one would hesitate to infer that the first was descriptive of the marital relation and imported on its face that the gift was made because of that relation; and that the latter was descriptive of the individual and imported an absolute gift. The difference of description would imply difference in purpose. So there is a material difference between a gift to testator's wife and a gift to the wife of another in this that the former necessarily implies recognition of a marital duty and is therefore dependent on its continued existence; while the latter implies no more than a purpose of identification of the object of bounty. The question in this case is not who was intended to take—for Mr. Jones cannot be supposed to have had in contemplation a future wife—but the character in which this legatee was intended to take, whether because of her marital relation to testator, or simply as an individual. If given because of the marital relation as the description imports, she can take it in no other character than as widow. It is suggested that to produce this effect an express condition of continuance of the marriage relation must have been attached to the gift; but there is no apparent reason why an implied condition should not be just as effective and the form of this gift implies continuance. Not only does the description of the legatee import on its face a conditional gift, but the quantity of the gift implies that testator had in view the intestate law and therefore marital right as the reason. There

is a well-settled principle that a widow will be presumed to take under the intestate law rather than under her husband's will where her interest is the same in either event: Davison's App., 95 Pa. 394; the statute furnishes the general rule of distribution and the will is simply declarative, and therefore no election is necessary; and conversely the testator must be presumed to have given in the same right in which this interest is taken by his widow, and therefore because of relationship to his widow as such.    While it is said that this estate consisted in part of realty, the natural inference is that the gift of "one-third" of the estate, which consisted largely of personalty, was suggested by the intestate law, and that consequently Mr. Jones had in view his wife's marital right under that law as distinguished from her individual right.    It was also upon this principle of implied conformity to the intestate law that bequests to a mother and her children gave the mother but a life estate: Hague v. Hague, 161 Pa. 643; and a legacy by a father to a child is understood as a portion, because it is a provision by a parent for his child: Miner v. Atherton, 35 Pa. 528. And it is upon a similar principle that a legacy is considered to have been given in satisfaction of a debt rather than as an independent gift where there is identity in amount.

An intent to give because of the marital relation is therefore apparent.

What Mr. Jones did or failed to do after the divorce was granted has nothing to do with the question involved here.    If the divorce worked a revocation, it could not be republished in any manner other than that prescribed by the statute of wills.    Many wills have been revoked pro tanto by implication, as for example in case of ademption, without a suggestion that testator was required to make it effectual by a written modification of his will.    The case of Brown v. Grand Lodge, 208 Pa. 101, is clearly distinguishable from this in that it was based upon a contract whose terms made change of beneficiary dependent on the act of the assured.    Why Mr. Jones did not do what he was not required to do, the evidence fails to show.    He may not have been in a condition after the divorce to have taken action, or he may have been advised or thought it unnecessary; but in any event he owed no duty to this claimant.

It may be conceded that there are English cases inconsistent with this view—some of them arising on marriage articles and some on wills; but the cases even there were not harmonious. Vice Chancellor Malins said of Boreham v. Bignall, 8 Hare, 131, the leading case, that the court evidently thought from the peculiar language used, that there was an intention to benefit the particular wife of his nephew, then living, and that the court might well have come to a different conclusion. In Garratt v. Niblock, 1 Russ. & My. 629, it was held that by the expression "my beloved wife" testator must have meant a particular wife; and so in Bryan's Trust, 2 Sim. (N. S.) 103, the language of the gift was held to point out a particular husband: Lyne's Trust, L. R., 8 Eq. 65. On the other hand, where there was a devise to testator's nephew for life, with remainder to the nephew's wife for life with remainder to children of his nephew by said wife, it was held to extend to the nephew's second wife: Peppin v. Bickford, 3 Ves. 570. In a somewhat similar case Vice Chancellor Malins reached the same conclusion. Attention is called to the fact that Sir George Jessel, master of the rolls, in a subsequent case disapproved of this decision; but he was noted for his disregard of precedent and his dictum might not stand against the ruling of a court of superior jurisdiction. Two cases were also cited on behalf of claimant from Supreme Court Reports in this country against implied revocation by divorce; but an examination of these cases will show that they are not applicable here. In the first (Bullock v. Zilley, 1 N. J. Eq. 489) the bequest was, not to the testor's wife, but to his son "Thomas Bullock and Rebecca his wife," and the decision was rested upon four grounds suggested by the peculiar language of the will as showing testamentary intent to make an absolute gift. No authorities were cited. In the other case (Charlton v. Miller, 27 Ohio, 298) the bequest was made in contemplation of marriage, and the court very properly held that it did not depend on marriage and could not therefore be lost by divorce. Even those cases which deny implied revocation by divorce, concede that a slight indication of a different intent will prevail, and are therefore distinguishable from the present case on this ground.

On the other hand, the case of Lansing v. Haynes, 95 Mich.

16 (54 N. W. Repr. 699), cited for the estate, is a strong authority in support of the doctrine of implied revocation by divorce. Mr. Lansing and wife executed mutual wills of their respective estates, and were afterward divorced. Pending the suit in divorce they entered into an agreement of division and release of their property, but no reference was made therein to their wills; and on Mr. Lansing's death an issue was raised of implied revocation on Mrs. Lansing's presentation of the will. In a very able opinion by Mr. Justice GRANT the court held that because of the absence of any reference to the will, the agreement did not amount to an express revocation under their statute; but that an implied revocation arose from the divorce. "By the decree of divorce in this case," said the court, "the parties became as strangers to each other, and neither owed to the other any obligation or duty thereafter. There was therefore a complete change in their relations," and the case fell within the principle laid down by Chancellor Kent, as above quoted. No Pennsylvania Supreme Court decision has been found in conflict with this view. The case of Brown v. Grand Lodge, 208 Pa. 101 cited on behalf of claimant, is, as already suggested, distinguishable from this by the fact that the right of the beneficiary had been fixed by contract subject to a new designation on the part of the assured which was never made, whereas revocation here arose by implication of law, and there was no republication as prescribed by statute. The case may, therefore, to use the language of the court in Lansing v. Haynes, 95 Mich. 16 (54 N. W. Repr. 699), be decided on the "common sense and reason upon which the law is based."

None of the judges who deny implied revocation by divorce attempts to reconcile his position with the common-law doctrine of implied revocation of will from change of circumstances; and logically they are irreconcilable, for there can be no change of circumstance more radical than that produced by divorce; if ademption will imply revocation, much more should this. A husband as such may show the greatest generosity in testamentary disposition; but it is not in human nature to give to her who has held his domestic faults up to public gaze as a means of dissolving marriage. Who would for a moment believe that if Mr. Jones were living to-day he would give Mrs.

Speer " one-third " of his estate ? To ask is to answer the question. Independent of the personal question, consideration for his son's interest would have a deterrent effect; the divorce caused such change in circumstances that his son became presumptively the sole object of testamentary obligation. And on the other hand, it is impossible to understand how, in view of Mrs. Speer's renunciation, she can consistently claim what without the existence of the marital relation would never have been given. She has no equity to recognition.

For these reasons I would disallow this claim.

*Errors assigned* were in dismissing exceptions to adjudication.

*David T. Watson*, of *Watson* and *Freeman*, and *George C. Wilson*, with them *Wm. D. Evans*, for appellant.—The legacy in question was given to the claimant in the character of wife, and as she did not answer that description at the testator's death, the legacy lapsed : Lee's Estate, 207 Pa. 218 ; Miltimore v. Miltimore, 40 Pa. 151 ; Act of June 4, 1879, P. L. 88 ; Bell v. Smalley, 45 N. J. Eq. 478 (18 Atl. Repr. 70) ; Hitchins v. Morrieson, L. R. 40 Ch. D. sec. 30 ; Seibert's App., 6 Atl. Repr. 105.

The bequest to Mary Brown Jones has been revoked by implication by reason of the changed relations produced by her obtaining a divorce from the testator since the making of the will : Lansing v. Haynes, 95 Mich. 16 (54 N. W. Repr. 699).

Whatever the desires of testator at and immediately before his death can be shown to be, will govern : Young's App., 39 Pa. 115 ; Marshall v. Marshall, 11 Pa. 430 ; Chace v. Chace, 6 R. I. 407 ; Comfort v. Mather, 2 W. & S. 450 ; Johnson's Estate, 201 Pa. 513 ; Ursinus College's App., 23 W. N. C. 261.

A divorce a vinculo in Pennsylvania is equivalent to death, so far as husband and wife's relations and rights in the estates of each other are concerned : Flory v. Becker, 2 Pa. 470 ; Koenig's App., 57 Pa. 352.

*Warren I. Seymour* and *H. K. Siebeneck*, of *Seymour, Patterson & Siebeneck*, for appellee.—The use of the word " wife " is descriptive only and implies no condition : Hardy v. Smith,

136 Mass. 328; Giles v. Giles, 1 Keen, 685; Schloss v. Stiebel, 6 Sim. 1; Williams v. Neff, 52 Pa. 326.

The word " wife " identifying the beneficiary relates to the date of the will: Garratt v. Niblock, 1 Russ. & My. 629; Parker v. Marchant, 1 Y. & C. 290; Anshutz v. Miller, 81 Pa. 212; Davis v. Kerr, 3 App. Div. 322 (38 N. Y. Supp. 387).

The divorce did not render the legacy either lapsed or void: Doe v. Sheffield, 13 East, 526; Charlton v. Miller, 27 Ohio, 298; Evans v. Carrington, 1 Law Times Rep. (N. S.) 229; Bullmore v. Wynter, 48 Law Times Rep. (N. S.) 309; Fitzgerald v. Chapman, 33 Law Times Rep. (N. S.) 587.

There was no implied revocation: Coates v. Hughes, 3 Binney, 498: Young's App., 29 Pa. 115; Forse v. Hembling, 4 Coke, 60; Christopher v. Christopher, 4 Burr. 2182; Clingan v. Mitcheltree, 31 Pa. 25; Bryce's Est., 194 Pa. 135; Lee's Est., 207 Pa. 118.

On the effect of divorce on the legacy we cite a case on all fours with the case at bar, viz.: Card v. Alexander, 48 Conn. 492; Boddington v. Clairat, 48 Law Times Rep. (N. S.) 110; Newlin's Est., 209 Pa. 456: McKnight v. Read, 1 Wh. 213.

OPINION BY MR. JUSTICE POTTER, April 10, 1905:

The questions presented by this appeal, as stated by the appellant, are:

1. Does a legacy, in these words, " one third to my wife, Mary Brown Jones," lapse, when the wife subsequent to the date of the will, at her own instance, obtains a divorce a vinculo matrimonii?

2. Is a bequest " to my wife Mary Brown Jones " revoked by implication, by reason of absolute divorce?

We take up these questions in order.

What is there in the facts of this case to support the claim that the legacy has lapsed? The person named as legatee did not die in the lifetime of the testator, nor did any other event occur in the lifetime of the testator, which under the language of the will, would render the testamentary gift inoperative. The donee survived the testator and is alive, and has both capacity and willingness to take under the will. But it is suggested in the argument, that while not physically dead, the

donee by her own act in obtaining the decree of divorce, ended
the marital relation, as absolutely as death would have done.
This consequence did follow the divorce, in so far as the duties,
rights and claims accruing to her by reason of the marriage are
concerned.   With respect to the determination of these rights,
and these alone, is divorce the equivalent of death.   The de-
cree in divorce took away only what the law gave to her when
the marriage was contracted.   This was the right to support,
and to dower in his estate if she survived him.   After the entry
of the decree, the testator was no longer bound to provide for
her, and she had no further claim upon his estate.   What the
law gave, it took away; nothing more.

   The beneficiary is not here claiming anything which accrued
to her in pursuance of her marriage.   She is here only as a
legatee, and is asking for that only which the testator gave to
her of his free grace, and as a matter of bounty.   That which
he gave to her in his will, was his own, to give or to withhold
as he saw fit.   A bequest needs no consideration to support it.
As a legatee she stands upon the same footing as any other in-
dividual, and her relation to the testator has nothing to do with
the case, unless he chose to make it an element, in the bestowal
of the gift.   Did he do so?   The provision in the will is as fol-
lows : " I direct that my funeral expenses and all debts be
promptly paid, and that my estate be divided as follows : One
third to my wife, Mary Brown Jones, and the balance to my
son, Thomas Mifflin Jones."   The will was dated April 24, 1899,
and Mary Brown Jones was then the wife of the testator.   On
February 6, 1900, the said Mary Brown Jones began proceedings
in divorce, and the decree was granted to her on September 19,
1900.   Thomas M. Jones, Jr., the testator, lived about one year
and eight months after the divorce was granted, and died on
May 17, 1902.   Mary Brown Jones did not remarry during the
lifetime of the said Thomas M. Jones, Jr., but she did marry
about six months after his death.   It will be noticed that the
gift was to " My wife, Mary Brown Jones," without any con-
ditions or limitations.   The testator gives the one third of his
estate to a particular person, naming her, and further identify-
ing her by the statement that she is his wife ; that is in substance
what he says.   He makes no stipulation that she shall remain
his wife, or be such at the time of his death.   We are clear that

such use of the word " wife " as is here made, is descriptive only, and does not imply any continuing condition.

" The mere fact that a gift is made to a named legatee in a certain character, as for instance to my wife A, does not avoid the legacy, if the legatee does not happen to fill the character: " Theobald on Wills (5th ed.), p. 247. In Bullock v. Zilley, 1 N. J. Eq. 489, the words " his wife," as applied to complainant, were held to be mere words of description of the individual, and not as defining the capacity in which she was to benefit. In Mellen's Estate, 28 W. N. C. 120, where the beneficiary was named as " T. W. the husband of my said daughter," the word " husband " was held to be a description of the person and not of the character in which he was to take. The reasoning of Judge PENROSE fits accurately this case. He said : " We may conjecture, but we cannot be certain, that the inducing cause of the provision for Thomas Waller was that he was the husband of the testator's daughter. The relationship, however, could not have been the sole motive since the gift is to the individual by name, and not to him simply as husband, nor is there, as in Bell v. Smalley, 18 Atlantic Repr. 70, the evidence offered by the restriction of the bounty to the time during which the beneficiary remains unmarried. We have no right to say that the gift was subject to the condition that the donee should at the time it took effect be the husband of the daughter."

In Brown v. A. O. U. W., 208 Pa. 101, where a certificate was payable at the death of John Brown to his wife, Mattie Brown, we held that it was for the individual, Mattie Brown, without regard to the fact of her continuing to be the wife of the member, and subsequent divorce did not forfeit her right. The husband there had the power to change the beneficiary at any time, and we held that the fact that he did not do so, during a period of eight years between the divorce and his death, made evident his intention not to deprive his first wife of the benefit of the policy. " Where a man retains a revocable instrument with full opportunity of revoking it, and does not revoke it, there is a strong presumption that he wishes it to stand: " TILGHMAN, C. J., in Irish v. Smith, 8 S. & R. 573.

We are clear that the will indicates that the testator intended the gift for the individual, Mary Brown Jones, who was at that

time his wife, and identified by him as such. We think the
bequest is unrestricted, and that the words, " my wife," are,
as we said above, only descriptive, and do not import a condi-
tion that the beneficiary shall remain his wife. Nor do we
doubt that as to the object of the legacy the will speaks from
its date : Anshutz v. Miller, 81 Pa. 212. " Prima facie a gift
to the wife of A, who had a wife living at the date of the will,
goes to that wife and no other. . . . If there is anything on
the face of the will to show that an existing person is re-
ferred to, the case is clear: " Theobald on Wills, 249.

Nor is there anything in the Act of June 4, 1879, P. L. 88,
to the contrary. Under the requirements of that act, it is
" with reference to any real or personal estate embraced in it "
that every will shall speak as of the testator's death. In Ro-
beno v. Marlatt, 136 Pa. 35, the court below said, on page 37 :
" It is claimed, however, that the act of June 4, 1879, bars
their (after-born children) right. This act has received judi-
cial construction, the results of which are that as to the con-
dition of the donees the will speaks as of the date; as to the
subjects of the testamentary disposition, the will is construed
as of the death; as to the objects, that is, the persons who are
to take under it, and their condition, the will speaks as of its
date ; as to the testator's condition, it is to be considered as of
its date. The act is restricted in its effect to the real and per-
sonal property passing under it." And this statement was af-
firmed by this court.

But turning to the second question presented here, it is
elaborately argued that as matter of law, the bequest to Mary
Brown Jones was impliedly revoked by reason of the divorce.
No authority has been cited in support of the proposition that
divorce in itself is sufficient to work a revocation of a will, and
we are not aware that any exists. The only case which has
been cited by counsel as sustaining this position is Lansing v.
Haynes, 95 Mich. 16. But examination shows that the Michi-
gan statute allows the court to determine whether the subse-
quent changes in the condition or circumstances of the testator,
are sufficient to work an implied revocation of the will. And
the decision in that case rested also upon the fact, that pend-
ing the divorce proceeding there was a settlement of the prop-
erty rights of the parties. A division of the real estate was

made, each deeding to the other. An agreement was also made by which the husband conveyed to the wife certain personal property, and she agreed to release him from all demands of every kind or nature. The agreement stated that it, and the deeds executed by them, were intended as a property settlement between them. This was a practical satisfaction of the bequest, and amounted to an ademption.

As we read this decision, it was controlled by the fact of the settlement of property rights between the parties and not by the divorce itself. At common law, the doctrine of implied revocation of a will from change of circumstances, did not include divorce. In fact the instances were few, under the common law, in which an alteration of circumstances was held sufficient to justify an implied revocation. Both at common law and under the statutes of most of the states, it is only certain definite changes in the condition or family relations of the testator which impliedly revoke a will, executed before such changes. The great weight of authority is that no changes beyond the few which have been many times specifically enumerated and recognized as sufficient for the purpose, can have this effect: Page on Wills, sec. 280. A will may be so easily revoked by the testator in his lifetime that the courts have been slow in permitting changes in circumstances to do, by implication, what the testator may so readily do for himself. In Wogan v. Small, 11 S. & R. 141, TILGHMAN, C. J., said: "There is one case, and only one, in which it has hitherto been thought proper to decide, that the revocation of a will might be implied from an alteration of circumstances, and that is, when the testator married and had a child, subsequently to the making of his will; but both circumstances must concur; . . . . The danger of this principle of implied revocation is very great, and that is the reason why, although very strong cases of hardship have occurred, the judges have never ventured to advance beyond that one step. We have the less reason to resort to implied revocation, as our legislation has provided for the case of subsequent marriage or children by the Act of April 19, 1794, 3 Sm. L. 143. . . . Once establish the judicial habit of examining the situation of a man's fortune or family, and revoking his will, because he has made an absurd or an inhuman disposition of his property, or because we merely

suppose he was ignorant of the state of his affairs, or of the law, and no man's will is safe." These words were weighty then, they should be equally so now.

The opening sentences in Marshall v. Marshall, 11 Pa. 430, are obiter dicta, for there was no occasion in that case to consider the question of what was sufficient to justify an implied revocation of a will. That subject was not before the court. The testator in that case, after devising one tract of land to one son and another tract of land to another son, subsequently sold the first tract. It was urged that this would work a revocation of the whole will. But the court decided that the sale affected only the devise of the tract in question, and the residue of the will remained in full force. It was a case of ademption, which applies only to the subject-matter of testamentary disposition. When the subject-matter bequeathed is sold, or disposed of, it is thereby completely extinguished, and nothing remains to which the words of the will can apply. The principle of ademption is entirely distinct from that of an implied revocation of the terms of the will. Ademption has to do with the subject-matter of the bequests, while the doctrine of implied revocation is founded upon a presumed neglect of duty, upon the part of the testator, or upon a change in his family relations. Ademption involves action upon the part of the testator; the doing of some act with regard to the subject-matter, which interferes with the operation of the words of the will. That is he anticipates the gift there made, by bestowing it during his lifetime upon the legatee, or disposes of the subject-matter in some way which puts it out of the question to follow his directions as set forth in the will. Nothing of that kind has been done in the present case. The testator has not interfered with his estate in any way inconsistent with the terms of his will.

The statutory rules in Pennsylvania, as to the revocation of wills, are reviewed by READ, J., in Walker v. Hall, 34 Pa. 483, and on page 487 he says " we have in reality substituted for the common-law rule, one of our own, depending entirely upon our statutory enactments " and he concludes with the statement that our rules are not open to the doctrine of implied presumption. In Young's Appeal, 39 Pa. 115, the court held that the testamentary paper was executed under a special

power, and not under the statute of wills. Whatever is there said, as to a change in circumstances which create new moral duties, amounting to implied revocation, is obiter dicta, in so far as it goes beyond the conditions enumerated in the statutory enactments. The decision was that the will was revoked by the birth of a son to testatrix after the making of the will. While it was the disposition of an equitable estate, yet it followed the principle of the statute.

We are by no means singular in holding to the doctrine that the changed condition of the testator must be within the conditions named in the statutes, for this view prevails largely in other states; for instance, in re Comassi's Estate, 107 Cal. 1,* it is said, "in order to determine whether a will has been properly executed or revoked, or whether, after its execution, there has been such a change in the status or personal relations of the testator as in law will effect its revocation, we have only to determine whether the changed condition of the testator is within the condition named in the statute (cites code) . . . . The effect of these provisions is to do away with the doctrine of implied revocation, which was for so many years a subject of controversy in the English courts, and which, in many of the states of this country, is still permitted under a clause in their statutes, authorizing a revocation to be 'implied by law for subsequent changes in the condition of the testator.' " And in Davis v. Fogle, 124 Ind. 41.† "It is manifest that no act, thing or deed will revoke a will once duly executed, unless it comes within the provisions of the statute providing for the revocation of wills." In Noyes v. Southworth, 55 Mich.‡ 173, the court says: " There is no sound reason that we can perceive why, in the absence of statutes, implied revocation should be extended." And in Schouler on Wills, sec. 427, it is said: " In short, revocation of a particular will by mere inference of law or presumption, is limited to a very few instances in our modern practice. Modern legislation itself repudiates in England and some of our states, the old theory of implied intention to revoke on the ground of alteration of circumstances,

* Also Reported, 40 Pac. Repr. 15, Reporter.
† Also reported, 23 N. E. Repr. 860.
‡ Also reported 20 N. W. Repr. 891, Reporter.

and what is left of that theory aside from such statutes it would be very difficult to say."

A case much like the present, is Card v. Alexander, 48 Conn. 492. There the bequest was to "my wife Amelia." A year and a half after the execution of the will, the testator obtained a divorce from his wife for her misconduct, and four years afterwards died, without changing his will. It was held that the bequest was not to be regarded as conditioned upon the wife continuing to be such until his death; and that the divorce did not as matter of law impliedly revoke the will. The circumstances of the divorce in that case spoke more strongly against the claimant than here. In the present case, it was the misconduct of the testator which caused the divorce.

We can see nothing in the facts of this case, which would justify any extension of the doctrine of implied revocation. The reason which lies behind the doctrine as defined both in the common law and by the statutes, is that some obvious injustice may be prevented. That some moral duty, which has been overlooked, it is presumed, by the testator, may be discharged. What would be the result of holding in this case, that the change in circumstances worked a revocation? Only this : the whole estate of testator would go to his son, to the entire exclusion therefrom of his former wife and the mother of his child. Can it be said that the obtaining by the wife of a divorce, by reason of the misconduct of the testator, entailed upon him any moral duty to destroy the provision, which he had made in his will, for the woman who was for years his faithful wife, in order to pile up far more than a competency for their child.

The only inference which can be drawn from the record in this case, is that the testator, and he alone, was responsible for the rupture of the marital ties. It may well be, then, that by the provision in his will he intended to make some reparation for the sorrow and distress he brought upon his wife. To impute to him such intention would be more kind, than to presume, as is urged in the argument, that he was filled with resentment, and became possessed by an ignoble purpose which he failed to carry out. He must have known that he could change or destroy his will at any time, yet he did not do so.

We agree with the conclusions reached and stated by the auditing judge in his careful and able opinion, that " To hold under the facts in this case that the divorce revoked this bequest would not be in accordance with statutory regulations, and would be extending the doctrine of an implied revocation beyond any authoritative adjudication; and would be contrary to the express and implied intention of the testator."

The specifications of error are overruled. The decree of the orphans' court is affirmed and this appeal is dismissed, at the cost of the appellant.

Mr. Chief Justice Mitchell, dissenting.

I would reverse this judgment for the reasons so ably set forth in the opinion of Judge Hawkins.