PACETTI *v.* ROWLINSKI.

No. 7003.   DECEMBER 16, 1929.

*Bouhan & Atkinson* and *Gilbert W. Fincher,* for plaintiff in error.
*Farr & Richter,* contra.

RUSSELL, C. J.   William E. Rowlinski offered for probate in the court of ordinary of Chatham County a paper purporting to be the will of his brother, Robert A. Rowlinski.   Mrs. Bertha Rowlinski Pacetti filed a caveat, and upon the hearing in the court of ordinary the will was set up.   Appeal was taken to the superior court, and the case is here upon bill of exceptions to the direction of a verdict by that court.   Exception is also taken to a ruling by which an offered amendment to the caveat was stricken upon motion.

Two questions are presented for adjudication, and we shall deal with them in their appropriate order.   It appears that the third ground of the original caveat was stricken by the court before the amendment was offered, but no exception is taken to this; and therefore it is unnecessary to examine the ground upon which this paragraph of the caveat was based.   The amendment which the court struck set forth that the deceased was fearful that his wife would obtain his property before he could obtain a divorce, and that a few days after the execution of the will the deceased and his wife executed a contract under which the deceased paid his wife $5000 for the surrender of her marital rights in his property.   Further, it is stated that a total divorce was granted between the deceased and his wife, and after divorce the wife had no right in his estate as a matter of law.   "Caveatrix says that the will, hav-

ing been drawn for the purpose of defeating any claim his said wife may have had in his estate, and the deceased and his wife having made settlement of all their property rights, and thereafter a total divorce having been granted, that the divorce coupled with the settlement of the property rights between the parties impliedly revoked the will of the deceased, and the proposed will was not valid at the time of the death of the deceased." Able and industrious counsel for the plaintiff in error have cited a large number of cases from other jurisdictions in support of the contention that where the status and responsibilities of a testator change after the making of a will, the will is revoked where the testator has been divorced and had a property settlement with his late wife. Counsel quote also from 9 R. C. L. 495, § 316, in reference to divorces revoking wills: "The doctrine that a settlement of property rights, made by the parties in anticipation of divorce, impliedly revokes a will, finds, strong support in the authorities."

While the authorities cited might be persuasive authority in the absence of any Georgia law upon the subject, we do not deem them to be in point in this case. Section 3923 of the Code gives but two instances as circumstances in which the revocation of a will is implied by law: "The marriage of the testator, or the birth of a child to him, subsequently to the making of a will in which no provision is made in contemplation of such an event." In this case it is not contended that there was an express revocation, or that a later will was made. The amendment was based upon the theory that the deceased in making the will was acting under an insane delusion that his wife might get a part of the estate in which he did not wish her to participate; and it appears from the first item of the will that the deceased was not subject to monomania, because he knew that he had provided an ample safeguard against such a contingency by a contract of settlement with his wife. "A misconception as to a particular matter can not properly be characterized an insane delusion, when it does not spring up spontaneously from a disordered intellect, but is the result of an erroneous conclusion, based either upon a mistake of fact or upon an illogical deduction drawn from facts as they really exist." *Bohler* v. *Hicks*, 120 *Ga.* 800 (2) (48 S. E. 306). In *Hargroves* v. *Redd*, 43 *Ga.* 142, 157, it was said by Mr. Justice McCay: "It will be found, I think, that the classifications of our Code pretty nearly, if not quite,

exhaust the subject [of revocation]. . . 4th. Revocations by change of domestic relations, which, by our law, is confined to two specified changes, to wit: marriage, or the birth of a child subsequent to the making of a will in which no provision is made in contemplation of such an event." It was further said: "The very meaning of the word revoke involves a *change of mind* in the testator. A careful consideration of the different acts which the books and the statute treat as evidence of revocation will show that the idea of a *change of mind* of the testator is a fundamental one in questions of revocation. There is some act of the testator, some exercise of his will, by which he either expressly recalls his previous disposition, or from which the law implies that he intended so to do. I do not think a case can be found, where a *will* has been held to be *revoked* by anything else than the testator's own act." And likewise we are of the opinion that under the Georgia statutes no case can be found which would authorize the conclusion that a divorce under the circumstances set forth in this record could possibly authorize the implication that the deceased had revoked his will.

■ The writer adheres to the view expressed in *Miraglia* v. *Gose*, 17 *Ga. App.* 639 (87 S. E. 906), quoted by the plaintiff in error: "Whether a trial judge has erred in directing a verdict can not be otherwise determined than by the inquiry whether, from any view of the evidence, inferences may be drawn favorable to the adverse party, upon which the jury might lawfully find contrary to such direction." In fact we are of the opinion that a verdict should not be directed if there is any evidence at all which would authorize a jury by any reasonable inference to find a different verdict from that directed. However, a jury is not authorized to find a verdict upon mere suspicion, nor are they permitted to rest a finding upon inferences which are not supported or even warranted by evidence. The propounder made a perfect prima facie case. The execution of the paper offered for probate was shown to have been properly witnessed as required by law, and it was also shown that the testator was of sound mind. All the essentials necessary to make a prima facie case were clearly established. This being so, the burden of proof was shifted from the propounder, and it devolved upon the caveatrix to establish the claims of her caveat before it could be said that there was any issue before the jury. There were only two

grounds of caveat submitted to the jury. The first set up that Robert A. Rowlinski was not of sound and disposing mind and memory as regarded the members of his family, which particular unsoundness of mind affected the making of the purported will. The second ground set up that the deceased, immediately before the drawing of the paper, had difficulty with his second wife and later separated from her and made a settlement upon her, and that the fear that she might get his property or some part of it upon his death preyed upon his mind and obsessed him; that he suffered from monomania and his mental faculties worked solely upon the theory of cutting off any inheritance to his late wife, etc. It appears from a full review of the evidence that not a witness, not even the caveatrix herself, swore that Robert A. Rowlinski was not of sound and disposing mind and memory in any respect, nor specially that he was not of sound and disposing mind "as regarded the members of his family." The testimony in behalf of the caveatrix showed that he was on the best of terms with all of his sisters, and especially with the caveatrix; that he often visited his mother and several times carried her money which she would not accept, insisting that she would prefer for him to keep it and give it to her later if she should need it then. We do not think that the evidence as a whole or any single circumstance tends to show that the maker of the will did not know who his heirs at law were and that they were living, and nothing appears to show that he was influenced by unkind feelings towards any of them or partiality for one of them over the other, unless it may be said that he was much more attached to the caveatrix than other members of the family, and that he was not on specially intimate terms with his brother, who was the only legatee in the will, and on the contrary had made derogatory remarks about him.

As to the second ground of the caveat, that the testator suffered from monomania (not that he was generally insane upon any other subject) in that "deceased's mental faculties worked solely upon the theory of cutting off any inheritance from his late wife," the will introduced in evidence, which shows that he left his brother William E. Rowlinski the sole legatee, together with the undisputed evidence that he was a person of sound mind, presented no inference that he was suffering from monomania, because if the object had been to defeat his wife he would put in as legatees his mother, to

whom he was devoted, and his oldest sister, to whom he is shown to have been much attached, and would not have put in his brother, or he would have put in all his heirs at law, knowing that this would be following the laws of inheritance and would naturally for that reason be more in accord with the feelings of any jury who might pass upon the validity of the will. As said in *Bohler* v. *Hicks,* supra, "A misconception as to a particular matter can not properly be characterized an insane delusion, when it does not spring up spontaneously from a disordered intellect, but is the result of an erroneous conclusion, based either upon a mistake of fact or upon an illogical deduction drawn from facts as they really exist." If Rowlinski, the deceased, was of the opinion that his wife after his settlement with her might still obtain a part of his estate, it would not show that he was suffering from monomania, no matter to whom he may have devised his estate nor who were his heirs, if, with a mind sound on all other subjects except this delusion about his former wife getting his property, based upon a misconception of either law or fact, he knew who his heirs were and had no real reason for disinheriting the one to whom he devised it. The mind of the testator did consider the question of his wife getting a portion of his estate, because the first item of the will states that he made no provision for her because for a valuable consideration she had released and relinquished her claim to dower and year's support and all other claim against the estate. This circumstance of selecting his brother alone would not have authorized an inference that he was suffering from monomania, in the face of the direct testimony that on all other questions at least he was a man of sound mind. It is quite clear that both grounds of the caveat rest in different degrees upon the ground that the deceased was afflicted with monomania, and the circumstances are insufficient to have authorized a jury to have reached such a conclusion. No ground of caveat alleged that the deceased was mentally incapable of making a will under all ordinary circumstances. The only contention was that by reason of his obsession he was induced to make this particular will. We are of the opinion that the court did not err in directing a verdict in favor of the propounder.

*Judgment affirmed. All the Justices concur.*