## Darrow Estate.

Argued November 10, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Roger M. Brown*, for appellant.

*William W. Knox*, with him *Wayne A. Gleeten*, for appellee.

OPINION BY RHODES, P. J., January 14, 1949:

This is an appeal from the final decree of the Orphans' Court of Erie County dismissing exceptions to an adjudication and decree wherein the court sustained the last will and testament of decedent and awarded the balance of decedent's estate to Mabel Darrow, former wife of decedent, who had obtained a divorce from him.

The question presented is whether a will wherein a husband bequeaths all of his property to his wife was revoked by a subsequent divorce obtained by the wife and a prior agreement for a division of their property.

The holographic will of Elton Darrow [also known as Elton Fayette Darrow, Elton F. Darrow, and E. F. Darrow] was offered for probate on October 22, 1947,

by the former wife, and it read as follows: "November 30, 1935 If anything should happen to me I want my wife to have all my property. Elton Darrow." Darrow died on May 22, 1947. He and Mabel Darrow were married on October 8, 1900, and they lived together on a farm in Erie County until 1944, when, by agreement, they separated; they never lived together as husband and wife thereafter. Prior to their separation each was the owner of a farm; they disposed of such real estate and their jointly owned personal property and made a partial division of the proceeds.

On July 21, 1945, they entered into a written agreement, which recited that the parties were living separate and apart. The primary purpose of the agreement was stated in the first clause as follows: "Whereas, First and second parties are living separate and apart from each other, and first party [decedent] desires to provide second party [his wife] with additional funds for her better support and maintenance." After reciting the respective amounts of their joint earnings (approximately $4,000 and $3,100), the agreement provided that decedent would pay his wife the additional sum of $750 which would result in an equal division of their joint accumulations. This sum the wife accepted in full satisfaction of all claims for support and maintenance. The agreement contained the usual separation covenants, permitting each to live separate and apart from the other. Paragraph 4 of the agreement reads as follows: "It is further understood and agreed that this agreement shall be binding upon the heirs and assigns of the parties hereto, and that the survivor of the parties hereto shall not and will not claim as heir to the deceased, nor the heirs of either against the heirs of the other by reason of the parties hereto being husband and wife."

On February 21, 1946, the wife, Mabel Darrow, obtained a divorce from decedent. After decedent's death on May 22, 1947, letters of administration were taken out, and a brother, Perry Darrow, was appointed admin-

istrator of the estate. By stipulation of all the interested parties, the question of the revocation of the will which Mabel Darrow offered for probate was raised upon the audit of the administrator's account. The court below held that the will had not been revoked and ordered that it be admitted to probate; the balance for distribution was awarded to Mabel Darrow. The letters of administration were revoked. There were only collateral heirs. The present appeal is by Perry Darrow, a brother and an heir of decedent.

At the audit Mabel Darrow was allowed to testify, subject to objection, to the effect that she and her former husband, the decedent, continued on friendly terms after their separation and divorce. She testified that on one occasion, shortly before his death, when he was being driven to the hospital for an operation, he asked her if she still had the will which he had previously given to her; upon receiving an affirmative reply he said to her, "then that is all right." She also testified to other declarations of decedent which were made subsequent to the divorce, indicating that he intended her to have his property upon his death. Three other witnesses were allowed to testify, subject to objection, to statements made by decedent subsequent to the execution of the agreement on July 21, 1945. Their testimony was to the effect that decedent had told them that he had made a settlement with his wife, and that she could make no further claims against him.

Section 20 (a) of the Wills Act of June 7, 1917, P. L. 403, 20 PS § 271, provides: "No will in writing, concerning any real estate, shall be repealed, nor shall any devise or directions therein be altered, otherwise than by some other will or codicil in writing, or other writing declaring the same, executed and proved in the manner hereinbefore provided; or by burning, canceling, obliterating, or destroying the same by the testator himself, or by someone in his presence and by his express direction." Section 20 (b), 20 PS § 272, of the

same Act, sets up the same requirements for the revocation of a will concerning personal property, except that such a will may also be revoked by a nuncupative will.

We have no doubt that under the Wills Act of 1917 a will or legacy in favor of a spouse was not revoked by reason of a subsequent divorce alone. *Jones's Estate*, 211 Pa. 364, 69 L. R. A. 940, 107 Am. St. Rep. 581, 60 A. 915, 3 Ann. Cas. 221.

In *Jones's Estate*, supra, testator, by his will dated April 24, 1899, directed that his estate be divided as follows (page 365 of 211 Pa., page 915 of 60 A.): ". . . one-third to my wife Mary Brown Jones and the balance to my son Thomas Mifflin Jones." On September 19, 1900, the parties were divorced at the instance of the wife. Testator died May 17, 1902, and his will was probated May 29, 1902. On October 8, 1902, Mary Brown Jones remarried. The Supreme Court (the Chief Justice dissenting) held that the doctrine of implied revocation of a will by reason of a change of circumstances or conditions (except in the cases enumerated in the statute) did not prevail in Pennsylvania, and that to repeal or alter a will there must be a compliance with the statutory provisions. In its opinion the Court distinguished *Lansing v. Haynes*, 95 Mich. 16, 35 Am. St. Rep. 545, 54 N. W. 699, cited in support of the doctrine of implied revocation, on the ground that there had been a practical satisfaction of the bequest to the wife, which amounted to an ademption; and that the Michigan statute allowed the court to determine whether the subsequent changes in the condition or circumstances of the testator were sufficient to work an implied revocation of the will.

Section 7 (2) of the Wills Act of April 24, 1947, P. L. 89, effective January 1, 1948, 20 PS § 180.7 (2), provides: "(2) Divorce. If the testator is divorced from the bonds of matrimony after making a will, all provisions in the will in favor of his spouse so divorced shall be thereby revoked." This Act has no application

to the present appeal, except to indicate a recognition of the law as it existed prior to the change by the Act.

It was also held in *Jones's Estate*, supra, 211 Pa. 364, 60 A. 915, that the designation of an otherwise identifiable person as "wife" in the will was descriptive only, and that it did not affect her capacity to take where there was a subsequent divorce. See, also, *Brown v. Ancient Order of United Workmen*, 208 Pa. 101, 57 A. 176. As to the identity of a beneficiary or the object of a legacy, the will speaks as of its date. *Anshutz v. Miller*, 81 Pa. 212; *Solms' Estate*, 253 Pa. 293, 297, 98 A. 596.

We agree with the court below that there is nothing in the agreement of July 21, 1945, which could effectuate a revocation of the will giving Mabel Darrow all of testator's estate. The agreement has no particular designation, and, in any event, it is the substance of such a contract that controls. As to property, the agreement does little more than effect an equal division of the moneys which represented their joint efforts. Paragraph 4 expressly provides that the survivor will not claim as an heir of the deceased, but this cannot be extended by implication to include a release of the right of survivor to receive a legacy under the decedent's will. We find nothing in the agreement which would make it a revocation of the will as an "other writing declaring the same" under section 20 (a) and section 20 (b) of the 1917 Wills Act. The agreement contains no reference to testator's will of November 30, 1935, and it did not interfere with his estate in any way inconsistent with the terms of his will. The agreement was not evidence of revocation.

In cases arising in jurisdictions having statutory requirements substantially similar to those of Pennsylvania prior to the Wills Act of 1947, for the revocation of wills, it has been held that a legacy to a spouse is not revoked by one or more of the following acts: (1) A subsequent divorce; (2) a separation agreement; (3) a

property settlement. See *Sussdorff's Estate*, 43 N. Y. S. 2d 760, 761, 762, 182 Misc. 69; *Crane's Estate*, 6 Cal. 2d 218, 57 P. 2d 476; *Gartin v. Gartin*, 371 Ill. 418, 21 N. E. 2d 289; *Pacetti v. Rowlinski*, 169 Ga. 602, 150 S. E. 910; *Nenaber's Estate*, 55 S. D. 257, 225 N. W. 719; *Brown's Estate*, 139 Iowa 219, 117 N. W. 260; *Card v. Alexander*, 48 Conn. 492; Annotations, 25 A. L. R. 49, 55, 37 A. L. R. 312, 42 A. L. R. 1289.

We think it may be said, under *Jones's Estate*, supra, that the revocation of a will is entirely a matter of compliance with the statute. In the present case there was no revocation of the will in accordance with the provisions of the Act, and consequently Mabel Darrow takes as a legatee. In view of our conclusion, it is not necessary to consider or pass upon the admissibility of the testimony of Mabel Darrow as to declarations of decedent showing a continued friendly relation after the divorce, or to discuss any questions relating to the admissibility of evidence raised at the audit.

The decree of the court below is affirmed. Costs to be paid by appellant.