## ALEXANDER MARSHALL *v.* WILLIAM and ANDREW MARSHALL.

Revocation of a will *pro tanto* embraces all that part of the will, the execution of which is either totally destroyed and prevented by the alienation, or so far mutilated and impaired as to remove from the remnant the trace or impress of the testator's intent. The true test of the extent of the words *pro tanto*, seems to be the intent of the testator as collected from the act or deed, and the devises and bequests in the will on which it operated.

ERROR to the District Court of Allegheny.

*Sept.* 10.    This was an action of ejectment by Alexander Marshall against William and Andrew Marshall, for the undivided eighth part of a tract of land. The father of the parties, John Marshall, died seised of it, leaving eight children. The defendants claimed under the will of their father, which the plaintiff alleged had been revoked, by dispositions made of other property devised subsequent to the making of the will.

The testator devised to his son Archibald a tract of ninety-eight acres, directing that certain legacies were to be paid by Archibald to certain of his children; and to William, one of the defendants, he devised the tract in controversy, he also being directed to pay certain legacies. After the making of the will, the testator sold the land devised to Archibald, who, at the request of the purchaser, joined his father in executing the deed. Archibald received part of the purchase-money, and paid all the legacies charged on the land which had been devised to him, but which was sold by the testator in his lifetime, except the plaintiff's legacy. It was proved by Archibald, that the plaintiff said he would not take it.

Under the charge, the verdict was for the defendants. The principal error assigned was that the court erred in their charge in deciding, that "the sale of the tract of land devised to Archibald, was a revocation of the will, *pro tanto* only. The residue of the testator's will remained in full force. The land in controversy is devised to William Marshall, and that devise is not affected by the sale of Archibald's tract by the testator. The defendants, therefore, are entitled to your verdict."

*Woods*, for the plaintiff in error, relied upon Cooper's Estate, 4 Barr, 88.

*M'Candless* and *M'Clure*, contrà.—It is plain no revocation was intended, and the gift of the purchase-money of the land sold to the intended devisee of it is proof that the testator designed that the will should remain intact.

Partial alienations before the death of the testator do not work a revocation: 4 Barr, 88; 4 Greenleaf's Rep. 311; Skerret *v.* Burd, 1 Whart. 246; Haws *v.* Humphreys, 9 Pick. 350; Wogan *v.* Small, 11 S. & R. 141; Lewis *v.* Lewis, 2 W. & S. 455; 11 Ohio R. 287.

The opinion of this court was delivered by

COULTER, J.—It has been fully established, that an alteration of circumstances may amount to a revocation of a will of land; that such revocations flow from a presumption of law that the testator had changed his intention; and further, that such implied revocations are not within the statute of frauds. And although it was· said in Brady *v.* Cabot, Douglass, 31, that an implied revocation may be rebutted by parol evidence, yet that has been repeatedly overruled. In Goodtitle *v.* Otway, H. Blackstone, 522, Lord Chief Justice Eyre observes, that in revocations by operation of law, the *presumptio juris* is so violent that it does not admit of circumstances to be set up in evidence to repel it. Lord Kenyon and Mr. Justice Buller were of the same opinion in 5 Durnford and East, 61. Lord Loughborough, in Kennebel *v.* Stratton, 5 Vez. 633, observed, that the parol evidence did not weigh at all, being only conversations, and not amounting to a republication. The question, however, got its *quietus* in the case of Marston *v.* Roe, 8 Adolphus & Ellis, 14, where the Court of Exchequer Chamber, after full argument, decided against the competency of parol evidence to repel a revocation implied by law, on the ground that it would be productive of the evils intended to be averted by the statute of frauds. By the late statute of Victoria, passed in July 1837, a new aspect is given to the law in this respect, the 19th section of which act is as follows:—"No will shall be revoked by any presumption of an intention on the ground of an alteration in circumstances." And the 23d section provides, that "no conveyance, or other act made or done, except revocation under the statute, shall prevent the operation of the will with respect to such estate, or interest in such real or personal estate as the testator shall have power to dispose of at his death." These clauses are not in our

statute of wills.  In England, therefore, there would seem to be no longer any implied revocation, except where testator has aliened his estate absolutely, and not taken it back before his death.  But in this state, the law remains in this respect as it was in England before the statute of Victoria.  Revocations by act of the party, *animo revocandi*, are provided for, in our statute, in nearly the same words in which they are provided for in the statute of Victoria.  One class of implied revocation by law is provided for by our statute as it is in the statute of Victoria, that is, by subsequent marriage and the birth of a child.

There seems to be no reasonable doubt whatever, that in this state, under our late statute of 1833, implied revocations by operation of law, in cases of alienation by deed, still exist.  They do so in fact in England, where the alienation is absolute, and no estate taken back, either by the same or another conveyance, before the death of testator, notwithstanding the statute of Victoria.  The rule is here, that the revocation is, according to the common phrase, *pro tanto*.  And the question principally argued in the case on hand is, how far, or to what extent, these words are to be carried.  The spirit and reason of the rule seems to embrace all that part of the will, the execution of which is either totally destroyed and prevented by the alienation, or so far mutilated and impaired as to remove from the remnant the trace or impress of the testator's intent.  It is revoked, because it no longer is the will or intent of the testator.  There have been cases, and will be again, where it is impossible to define with mathematical precision the exact line where intention to revoke ceases.  These must be left to the judgment of the courts.  Thus, in the case of Small *v.* Wogan, 11 S. & R. 141, where a man had two farms of nearly equal value, and devised one of them to one son and the other to the family of his other son, and bequeathed $2,400 to a bastard of one of the sons, testator aliened one of the farms, and encumbered the other, so that it was sold after the death of testator, and nothing was left of the estate beyond what would pay the bastard.  And the court held, that as there was sufficient property for this bequest to operate upon, and as it was distinct, separate, and unconnected with the other devises, the will was not revoked, except as to the two sons of the testator, or *pro tanto* the sale and encumbrance.  The sons were therefore disinherited, and the bastard got all the estate.  Chief Justice Tilghman emphatically asks, whether the circumstances are sufficient to afford a well grounded presumption, that testator intended to revoke his whole will.  He thought, and the court with him, they

did not. The turning point in the decision is whether the facts afford a well grounded presumption of an intention to revoke. He admits in the conclusion that facts might exist which would imply a revocation of the whole will, but thought those existing in that case insufficient. And in Haws *v.* Humphry, 9 Pick. 361, the learned judge who delivered the opinion of the court, said there was not a single circumstance from which it could be inferred that the testator intended to revoke the whole will. The true test of the extent of the words *pro tanto* would seem to be the intent of the testator, as collected from the act or deed, and the devises and bequests in the will on which it operated.

In the case under consideration, the great body of the devises and bequests remains intact and unimpaired by the alienation of the ninety acres devised to Archibald Marshall, and the very production of the deed of alienation shows that Archibald was consenting, he executing the deed with his father and mother, being no doubt compensated for so doing. There is nothing whatever in the alienation or circumstances attending it, which gave the least room for a presumption that testator intended to revoke his whole will. All the presumptions are the other way. The body of the will stood separate and unconnected with the devise to Archibald, and could well be executed according to the intention of the testator. But the counsel for the plaintiff in error relies on the case of Cooper *v.* Cooper, 4 Barr, 88, to establish, that where a testator has two tracts of land, and alienates one of them during his life, that the whole will is thereby revoked by implication of law. That case, however, lies wide of the mark at which he aims. It expressly recognises the doctrine of revocation *pro tanto*, but proceeds on the ground that all the devises and bequests in the will were so intimately blended and connected with the devise of the house and lot which the testator alienated in his lifetime, that the remnant of the will could not be executed consistently with the testator's intent, and that he must have perceived that he was destroying its whole structure, and that therefore the whole was revoked, except the appointment of executor. The testator directed the house and lot, which he afterwards sold in his lifetime, to be sold by his executors, and that out of the proceeds his funeral expenses and his debts should be paid, and legacies to five of his children, and then directs that after the payment of his legacies, the balance of his property, real and personal, should be given to his two other children. Whether the house and lot not sold were sufficient to pay the legacies, did not appear on the record. If the legacies would have absorbed the

house and lot not sold by testator, then the two children entitled to the residue would have taken nothing.  And if the legacies fell with the alienation of the house and lot, out of which he directed them to be first paid, then the two children who were to get the residue, would take the whole estate.  But as it was clearly the intention of the testator that the house which he afterwards sold himself, and the house of which he died seised, should be a fund for the payment of his debts and legacies, and that the balance, after accomplishing these ends, only should go to the two children who claimed the whole, and as all the legacies and devises were so intimately complicated and blended together, it was the judgment of the court, that the law implied an intent of the testator to revoke the whole.  They may have erred in appreciating the facts which indicated the intent of testator, but they impugned no decided case, nor controverted any principle.  Even Chief Justice Tilghman, in the case of Wogan v. Small, admits that circumstances may be sufficient to authorize an implication of the revocation of the whole will.  He was no friend to the introduction, or rather the amplification of principles from the civil law, from whence the doctrine of implied revocation came to our system.  He was much addicted to the common law.  Indeed, the introduction of implied revocation was resisted at first by some eminent English judges, but encouraged and finally firmly established by more eminent ones.

There is nothing in the objection to the evidence adduced by the plaintiff.  It consisted of acts done by the persons in interest, not facts, or declaration of the testator.  But it was of no manner of consequence, and could have no legal effect one way or the other.

The judgment affirmed.