## Justus's Estate.

*Wills—Bequest—Condition void as against public policy.*

1. In Pennsylvania the right of a man to do as he will with his own has always been liberally construed. A donor, not under obligation to give, may give with such conditions as he pleases, subject only to the restriction that the conditions shall not be clearly illegal.

2. The law will not sanction any testamentary provision which is intended, or directly tends, to bring about a separation of husband and wife, and if, therefore, the testator's purpose is to induce a future separation or divorce of husband and wife, the condition is void as against public policy and the devise or legacy takes effect.

3. Where a testator left a very large estate and provided for his daughter an income of $500 per annum during life, with the added provision that should she survive her husband or separate from him and have nothing to do with him, then, and in either event, she was to have half of the income of his estate, it was held that the condition was intended to tempt and induce the daughter to abandon her husband, and it was, therefore, an unlawful condition as against public policy. The condition must be excised, thus vesting the gift.

Exceptions to auditor's report. O. C. Venango Co., Nov. T., 1920, No. 46.

*John L. Mattox* and *Thomas C. Cochran*, for exceptants.

*William Parker* (of *Trax & Parker*) and *W. Pitt Gifford*, contra.

CRISWELL, J., June 5, 1924.—Samuel Justus died Jan. 20, 1920, testate, leaving to survive him a widow, Edith C. Justus, and a daughter, Flora A., intermarried with Louis S. McKinley, besides collateral kindred. He had been twice married. His first wife died prior to Nov. 14, 1888, on which date he was married to Edith C., now his widow. Flora A. is a daughter by the first marriage, and on March 19, 1900, when she was in the sixteenth year of her age, was married to McKinley, then in the nineteenth year of his age. To this union a son, Samuel Justus McKinley, was born July 5, 1900. While there appears to be no proof of the fact, the auditor reports, and counsel for the parties in their briefs state, that Mr. Justus, at the time of his decease, was about eighty years of age. He left an estate valued at a sum in excess of $2,000,000, of which $7000 was realty and the balance personal.

By the terms of his will bearing date Oct. 4, 1909, he left sums aggregating $5000 to different charities, and sums aggregating in excess of $25,000 to various of his collateral kindred.

To his wife he gave the income of the one-half of the residue of his estate, after payment of legacies, during her life, if she so long remained unmarried. In case of her marriage, she was to receive $10,000, and no more.

Justus's Estate.

To his daughter, Mrs. McKinley, by the 21st paragraph of his will, he gave $500 per annum during life, with the added provision that should she survive her husband or should she separate from him and have nothing to do with him, then, and in either event, she was to have the other one-half of the income on the balance of his estate after payment of all bequests, and this further provision, viz.: "Should my said daughter die before her said husband and continue to live and cohabit with him during her life, then at her death all payments out of my estate under this bequest shall cease as I do not want her husband to receive anything out of my estate."

By the 22nd paragraph there is a provision, in case his daughter should die leaving a minor child or children, for the education of such child or children until he or they shall severally arrive at the age of twenty-one years, and for the payment to them of $500 per annum until they should arrive at the age of twenty-five years, when they were each to receive $5000 and a like sum of $5000 each when they should reach the age of thirty years. To these bequests there was added this requirement: "Provided, however, that no sum whatever shall be paid by my executor to any child of the said Flora McKinley unless and until such child shall agree under oath with my said executor that no part of the money received by such child from my estate shall be paid, loaned or given to its father, Louis S. McKinley, or be used or expended in any way, directly or indirectly, for or towards the benefit, maintenance, care or comfort of the said Louis S. McKinley; these bequests to the surviving child or children of the said Flora to take effect and become operative only upon the death of the daughter and not otherwise."

The residue of his estate he gave and devised to his executor and trustee, the Oil City Trust Company, for the erection and maintenance of an orphans' home.

At the hearing before the auditor it was contended on behalf of Flora A. McKinley, the decedent's daughter, that certain provisions of the will, and especially those above mentioned, were intended by the testator to induce a separation of his daughter from her husband, Louis S. McKinley, and that, for this reason, the condition annexed to the bequest of one-half of the income of the estate to the daughter was void, as being against public policy, and that the gift vested with the condition excised. The auditor so found and reported. To such finding and report the executor and trustee excepts, all other questions raised by the exceptions being auxiliary and subordinate thereto.

In Pennsylvania the right of a man to do as he will with his own has always been liberally construed. Accordingly, a donor, not under any obligation to give, may give with such conditions as he pleases, subject only to the restriction that the conditions shall not be clearly illegal: Stewart's Estate, 253 Pa. 277; Holbrook's Estate, 213 Pa. 93; while, as stated by the auditor, it is the settled law of Pennsylvania and elsewhere where the English common law rules prevail "that the law will not sanction any testamentary provision which is intended, or directly tends, to bring about a separation of husband and wife, and if, therefore, the testator's purpose is to induce a future separation or divorce of husband and wife, the condition is void as against public policy, and the devise or legacy takes effect." The case under consideration involves the application of these principles, and such consideration begins with a presumption in favor of innocence on the part of the testator and the validity of the provisions in question: Holbrook's Estate, 213 Pa. 93.

The intent of the testator is, of course, to be gathered from the whole will, but the particular provisions relied on by Mrs. McKinley as evidencing the

unlawful intent of the testator are those found in the 21st and 22nd paragraphs of the will and above referred to.

Summarizing the provisions above quoted, neither Mrs. McKinley nor her children are to receive anything out of the estate of her father, except the sum of $500 per annum bequeathed to Mrs. McKinley during her life, unless, first, she should survive her husband; second, she should separate from her husband and have nothing to do with him; third, should die, leaving a minor child or children, in which case the minor child or children would receive the limited provision for them above indicated, on complying with the condition prescribed.

While the general rule appears to be as found by the auditor, and hereinbefore noted, the varying conditions and circumstances involved in the different adjudications reported makes it often difficult to determine whether a particular provision is or is not prohibited and comes within or does not come within the rule. There are cases dealing with provisions alleged to be in restraint of marriage and others alleged to be intended to effect the separation of husband and wife, which are in a measure kindred to the former. Besides, in a number of the cases the event has depended upon the time the provisions or limitations were intended to take effect, and that has been the principal point in dispute.

The parties here differ as to the time when the condition limiting the gift to Mrs. McKinley was intended to take effect, it being contended on the part of the executor and trustee that it was intended to relate to the date of the death of the testator. Manifestly, he had in mind, when providing for her, in case she should survive her husband, any time either prior or subsequent to his own death. In the same connection and as a part of the same sentence is the alternative provision for her in case she should separate from her husband and have nothing to do with him. Reasonably, it must be concluded that, as to this, he had also in mind any time prior or subsequent to his death. Unquestionably, the language used appears to so indicate. To hold that the former contemplates her survival of her husband at a time subsequent to the death of the testator and the latter refers only to a separation prior to his death is to place a forced, complicated and unreasonable construction upon his language. There is within the four corners of the will no indication of any unwillingness on his part to provide for his daughter apart from her husband. He was willing to provide for her liberally on the decease of her husband or any time prior thereto that she might separate herself from him and have nothing to do with him. What he was unwilling to do himself, or permit those in charge of the estate to do after his death, if he could prevent it, was to aid, directly or indirectly, in any way or to any extent her husband. This fact is not left to inference; he expressly so states.

But on behalf of the executor and trustee it is urged that this question is governed by section 9 of the Wills Act of 1917. This section is a re-enactment of section 2 of the Act of June 4, 1879, P. L. 88, and provides: "Every will shall be construed with reference to the real estate and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will." This act is not regarded as controlling the question, for the reasons, first, that a contrary intention appears by the will; and, second, the act, by its terms, is restricted in its effect to the real and personal property passing under it. As to the persons who are to take under it and their condition and the testator's condition, the will speaks and is to be considered as of its date: Jones's Estate, 211 Pa. 364-383. So regarding this will, the testator had in

mind, not the time of his death, but the future after his death; a time when his daughter would separate herself from her husband and down to the time of her death.

In Com. *v.* Stauffer, 10 Pa. 350, relied on by exceptant, the question was whether a provision in general restraint of marriage, when annexed to a devise of land, was void for reasons of public policy. Such is not the question here presented and the case is not controlling.

Assuming that the provision in question was not intended to apply exclusively to the conditions existing at the date of the death of the testator, but was intended to apply thereafter during the life of his daughter as well, does the law sanction and will it recognize and enforce such a provision?

Upon the particular question here involved there is a dearth of Pennsylvania cases directly in point, but the same is considered more fully by textbook authors and in the adjudications of other jurisdictions.

On behalf of Mrs. McKinley, the contention is that these provisions of the will constitute an appeal, not only to her own selfish instincts, but to her motherly instincts and regard for her child as well to sever her marital relations with her husband, and that they were so intended by the testator. They contemplate a hundred-fold increase in the allowance for her in case she shall so separate, being more than sufficient for all her wants, besides an abundant provision, through her, for her child, whether she survive few or many years. However else such provision may be construed or characterized, it is, without doubt, a mighty and potent appeal to the cupidity of his daughter.

In King's Estate, 58 Pitts. L. J. 377, there was a gift of one-third of the residuary estate to a daughter, in trust for a son, to pay the income thereof to the son during life, and the further trust that if at any time during the son's life he should be finally separated from his wife, either by death or divorce, to convey the principal to him. It was held that this provision was not inhibited, and it was sustained. But death or absolute divorce were the conditions limiting the gift. Such is not the provision held under consideration.

In Gunning's Estate, No. 1, 234 Pa. 139, a somewhat similar provision is considered; but in that case it was held, on a fair construction of the language used by the testatrix, that the condition became effective at and was intended to relate to the time of her decease; that his right was determined by his status and the situation as it existed at that time, not being subject to change thereafter, and that, therefore, no inference could arise from the language used that the testatrix intended thereby to hold out an inducement to the donee to thereafter separate from his wife. Such authority is not, therefore, controlling of the question now presented for determination, unless it be held that the condition mentioned in the will became effective at the time of the death of the testator, which question is considered elsewhere herein. Neither is Holbrook's Estate, 213 Pa. 93, which determines only the effect of the gift of the income of a fund to a party during the term of her natural life or so long as she remains unmarried, with a gift over in case of her death or marriage. It is held that this is a lawful intent, although its practical effect may be to discourage marriage, and this is the well settled construction of such language.

In King's Estate, 58 Pitts. L. J. 377, Hawkins, J., states that: "The distinguishing feature of cases falling within the rule of prohibition is a condition which offers a direct inducement to the separation of husbands and wives, without any restraint of the means of accomplishment other than the mere whim of the donee." In support of this rule he cites, among other cases,

### Justus's Estate.

Conrad v. Long, 33 Mich. 78, where a gift to testator's sister, on condition that she cease to live with her husband, was held to be a direct inducement to separation. This condition is very similar to the one under consideration. The vesting of the estate here does not depend upon a divorce, as in King's Estate, 58 Pitts. L. J. 377, and Gunning's Estate, No. 1, 234 Pa. 139. Fairly construed, the condition contemplates, not a divorce upon legal grounds, not even an abandonment by the husband of his wife, but her voluntary separation from him; a separation in which she is to be the moving party and in which she is to persist thereafter by ignoring and having nothing to do with him. This she shall do before, under the terms of her father's will, she shall be entitled to anything more than a pittance, insufficient for her maintenance, not to mention her child, from his large estate. What greater or more direct inducement than a fortune in this world's goods could he have proffered his daughter as an incentive to disregard her marital vows and leave her wedded spouse? Departing this life, he had nothing else to offer. The condition comes clearly within the rule as stated by Judge Hawkins.

Conceding the rule that if the paragraphs referred to are reasonably susceptible of two constructions, one lawful and the other unlawful, that which is lawful should be adopted, it is not conceived that the rule is here applicable. The contention that the testator designed and intended only in good faith to provide for his daughter, in case she should be deprived of the support of her husband, has no reasonable basis in the will. The proportions, the radical change in the provisions, negative such construction and suggest only the intent to thereby tempt and induce the daughter to abandon her husband.

The 21st paragraph of the will provides for alternative events, on the happening of either of which the daughter shall be entitled to one-half of the income derived from the residuary estate. The first is in case she survives her husband. The second is in case she separates from him. On the happening of either event, his language is: "I give and bequeath unto my said daughter the other one-half of the income on the balance of my said estate after paying all the bequests herein made." If, as hereinbefore indicated, the condition imposed upon the latter is unlawful, as being against public policy, the condition must be excised, thus vesting the gift.

The distinguished counsel representing the parties in this controversy, recognizing its importance, have furnished the court with extensive briefs, citing numerous authorities in support of their respective contentions. While many of them have not been cited or referred to herein, they have been examined and considered in so far as practicable, and the decided weight of authority appearing therein is as the same are understood in line with the conclusions herein indicated. A detailed reference to them would be laborious and, it is believed, not helpful.

Regarding the conclusions hereinbefore noted as covering the material and controlling questions raised by the pending exceptions, the order which follows is made:

And now, June 5, 1924, after argument and due consideration and for the reasons given, the pending exceptions to the report of the auditor herein are dismissed and the report is confirmed absolutely.

From George S. Criswell, Jr., Franklin, Pa.