DETERMINED IN

# THE SUPREME COURT

OF THE

# STATE OF CALIFORNIA.

[No. 18393. In Bank.—April 3, 1895.]

IN THE MATTER OF THE ESTATE OF CLARA G. CO-MASSI, DECEASED. A. C. SEARLE, APPELLANT.

WILL OF MARRIED WOMAN—REVOCATION—SECOND MARRIAGE—CONSTRUC-TION OF CODE.—Section 1300 of the Civil Code, which provides that "a will executed by an unmarried woman is revoked by her subsequent marriage, and is not revived by the death of her husband," only applies to a will which is executed by a woman unmarried at the time of its execution, and does not apply to a will executed by a married woman, and such will is not revoked by a second marriage subsequent to the execution of the will.

ID.—EXECUTION AND REVOCATION OF WILL STATUTORY.—The right of any person to execute a will, as well as the form in which the will must be executed, or the manner in which it may be revoked, are matters en-tirely of statutory regulation.

ID.—POWER OF MARRIED WOMAN TO MAKE WILL.—By the common law a married woman has no power to make a will, and the marriage of a woman revoked any will that she had previously made; but in this state there is no restriction upon the power of a married woman to make a will, and, upon proof of its execution, it is entitled to probate the same as the will of any other person, unless it is shown to have been revoked in one of the modes prescribed by statute.

APPEAL from an order of the Superior Court of Sac-ramento County refusing to admit a will to probate and denying a new trial.

The facts are stated in the opinion of the court.

*A. C. Searle*, in *pro. per.*, Appellant.

The testatrix having been married at the time of the execution of the will in question, her subsequent marriage after the death of her first husband did not operate as a revocation of the will. (Civ. Code, sec. 1273; *In re Burton's Will*, 4 Miscellaneous Rep. (N. Y.) 12; 25 N. Y. Supp. 824; *In re Kaufmann*, 131 N. Y. 620; *Will of Ward*, 70 Wis. 257; 5 Am. St. Rep. 174; *In re Tuller's Will*, 79 Ill. 99; 22 Am. Rep. 164; *Noyes* v. *Southworth*, 55 Mich. 173; 54 Am. Rep. 359; *Webb* v. *Jones*, 36 N. J. Eq. 163; *Fellows* v. *Allen*, 60 N. H. 439; 49 Am. Rep. 329; *Hoitt* v. *Hoitt*, 63 N. H. 475; 56 Am. Rep. 530; *Morton* v. *Onion*, 45 Vt. 145; *In re Carey's Estate*, 49 Vt. 236; 24 Am. Rep. 133.) The provision of the code that " a will executed by an unmarried woman is revoked by her subsequent marriage" negatives the idea that the legislature intended to revoke the will of a married woman in case of her second marriage. (*Morgan* v. *Devenport*, 60 Tex. 230.) The language of section 1300 of the Civil Code, referring to a will executed by " an unmarried woman," is plain and unambiguous, and cannot be altered by construction. (*People* v. *Johnson*, 6 Cal. 500; *Nougues* v. *Douglass*, 7 Cal. 67; *People* v. *Weller*, 11 Cal. 77, 89; *Pena* v. *Vance*, 21 Cal. 149; *Hawley* v. *Brumagin*, 33 Cal. 394; *Shaver* v. *Murdock*, 36 Cal. 296; *Castro* v. *Tennant*, 44 Cal. 258; *Tape* v. *Hurley*, 66 Cal. 474.) Under our law there is no implied revocation of a will, and, when the will was valid when made, " it could only be revoked or altered by a subsequent writing duly executed, or by obliterating or destroying with intent to revoke." (Civ. Code, sec. 1292; *In re Tillman's Estate*, (Cal., Dec. 7, 1892), 31 Pac. Rep. 563; *In re Hickman*, 101 Cal. 613; Code Civ. Proc., sec. 1970.)

*Armstrong, Bruner & Platnauer*, for Respondent.

The cases cited by appellant do not apply in this state, as they were decided under the influence of the common-law rule that statutes in derogation of the common law must be strictly construed, while, under the law of

this state, the code is to be liberally construed, with a view to effect its objects and promote justice. (Civ. Code, sec. 4; *Estate of Apple*, 66 Cal. 434; *Carrasco* v. *State*, 67 Cal. 386; *Lux* v. *Haggin*, 69 Cal. 370; *People* v. *Soto*, 49 Cal. 68; *Ex parte Gutierrez*, 45 Cal. 429; *Goldtree* v. *Swinford*, 74 Cal. 589, 590.) Where the husband is entitled to inherit from the wife the will will be revoked by the subsequent marriage. In this state he is entitled to inherit whether she has children or not. (Civ. Code, sec. 1386; *Tyler* v. *Tyler*, 19 Ill. 151; also closing paragraph in *Lansing* v. *Haynes*, 35 Am. St. Rep. 548; *McAnnulty* v. *McAnnulty*, 120 Ill. 26; 60 Am. Rep. 552; *Young's Appeal*, 39 Pa. St. 115; 80 Am. Dec. 513, and note 516; *Gay* v. *Gay*, 84 Ala. 38; *Swan* v. *Hammond*, 138 Mass. 45, 52 Am. Rep. 255; note to *Graham* v. *Burch*, 28 Am. St. Rep. 358, *Lathrop* v. *Dunlap*, 4 Hun, 213; *Loomis* v. *Loomis*, 51 Barb. 257.) But if section 1300 of the Civil Code is to be so construed as not to include a woman who made a will while married, but afterwards became a widow and married again, then such case is covered by sections 1298 and 1299 of that code, if the rule that words used in the masculine gender include the feminine be applied. (Civ. Code, secs. 14, 1298, 1299.) The following cases bear upon the question here presented: *McGuire* v. *Brown*, 41 Iowa, 650; *Milburn* v. *Milburn*, 60 Iowa, 411.

HARRISON, J.—Clara G. Comassi died in the city of Sacramento July 31, 1892, and thereafter a document bearing date June 23, 1877, purporting to be her last will and testament, was presented to the superior court for probate. The probate was contested by Mabel Delphina Comassi, formerly Mabel Delphina Eric, claiming as heir to the deceased by virtue of an adoption; and, upon the hearing of the contest, the court found that in May, 1886, upon proceedings had in the superior court for Yuba county, that court made an order declaring that Mabel should thenceforth be regarded as the child of said Clara G. Comassi, and that the said Mabel and the

said Clara should sustain towards each other the legal relation of parent and child. The court also found that the will was properly executed, and that at the time of its execution the deceased was in all respects competent to make a will; that she was at that time a married woman, the wife of one G. Comassi; that her husband died on the 26th of December, 1878, and that on the 25th of August, 1886, she was again married to Joseph O. Barbeau, from whom she was subsequently divorced. The court held that her marriage subsequent to the execution of the will had the effect to revoke it, and denied the application for its probate. From this order the petitioner has appealed.

The right of any person to execute a will, as well as the form in which the will must be executed, or the manner in which it may be revoked, are matters entirely of statutory regulation. The power of the legislature to limit the class of persons who shall be competent to make a will, or to declare that a change in the personal status of such persons after its execution shall operate as a revocation of the will, or be a sufficient reason for denying it probate, is unquestioned. "The Civil Code establishes the law of this state upon the subjects to which it relates" (Civ. Code, sec. 4); and, in order to determine whether a will has been properly executed or revoked, or whether after its execution there has been such a change in the status or personal relations of the testator as in law will effect its revocation, we have only to determine whether, in the one case, there has been a compliance with the requirements of the statute, or, in the other case, whether the changed condition of the testator is within the conditions named in the statute. By the common law a married woman had no power to make a will, and the marriage of a woman revoked any will that she had previously made. In this state, however, there is no restriction upon the power of a married woman to make a will, and, upon proof of its execution, it is entitled to probate the same as the will of any other person, un-

less it is shown to have been revoked in one of the modes prescribed by the statute. Section 1292 of the Civil Code declares:

" SEC. 1292.  Except in the cases in this chapter mentioned, no written will, nor any part thereof, can be revoked or altered otherwise than: 1. By a written will or other writing of the testator, declaring such revocation or alteration, and executed with the same formalities with which a will should be executed by such testator; or 2. By being burnt, torn, canceled, obliterated, or destroyed, with the intent and for the purpose of revoking the same, by the testator himself, or by some person in his presence, and by his direction."

And section 1970 of the Code of Civil Procedure declares: " A written will cannot be revoked or altered otherwise than as provided in the Civil Code." The effect of these provisions is to do away with the doctrine of implied revocation, which was for so many years a subject of controversy in the English courts, and which in many of the states of this country is still permitted, under a clause in their statutes authorizing a revocation to be " implied by law from subsequent changes in the condition or circumstances of the testator."

The respondent does not controvert the effect of these provisions, but contends that, under the provisions of section 1300 of the Civil Code, the subsequent marriage of the testatrix had the effect to revoke her will. That section is as follows: " A will executed by an unmarried woman is revoked by her subsequent marriage, and is not revived by the death of her husband." By its own terms this section is applicable only to a will " executed by an unmarried woman," and can have no application to the present case, for the reason that at the time of the execution of her will the testatrix was a married woman, whose husband was at that time living. The argument of the respondent that this section controls the present case, for the reason that at the time of her subsequent marriage her will was the will of an unmarried woman, fails to cover all the conditions which the

section prescribes as essential to the revocation of a will previously executed. The section does not declare that every will of an unmarried woman shall be revoked by her subsequent marriage, but by its terms limits such revocation to " a will executed by an unmarried woman," and, unless she was unmarried at the time she executed her will, the section has no application. A will is "executed" when it is signed and attested in the manner prescribed by section 1276, and the will in the present case was so executed in 1877, at a time when Mrs. Comassi was a married woman.

The code is silent respecting the effect of a subse. quent marriage upon a will executed by a married woman, and, as the present will is not within any of the cases named in the chapter on wills, it is not excepted from the provisions of section 1292, and could be revoked only in one of the modes therein specified. In many states it has been held that the statutes which enable a married woman to execute a will have taken away the reason for the common-law rule, which held that the marriage of a woman revoked a will previously made by her, and that, consequently, the rule itself is no longer applicable. (*Webb* v. *Jones,* 36 N. J. Eq. 163; *Will of Ward,* 70 Wis. 251; 5 Am. St. Rep. 174; *Roane* v. *Hollingshead,* 76 Md. 369; 35 Am. St. Rep. 438; *Emery's Appeal in re Estate of Hunt,* 81 Me. 275.) In Ohio it is expressly declared by statute that such marriage shall not revoke her will. In this state the legislature has seen fit to adopt a different policy, but has limited the effect of marriage to a will executed by an unmarried woman. It is as useless to conjecture the motives that may have governed the legislature in singling out an unmarried woman as the only person whose will shall be affected by her sulsequent marriage, as it is to conjecture why there should be a difference in the effect of a subsequent marriage upon a will executed by an unmarried man and upon one executed by an unmarried woman. It has conferred upon each the same ability to make a will after marriage as before, and a woman

can immediately after her marriage made a will identical with the one made by her before her marriage. The legislature has, however, made these distinctions, and courts have no alternative except to give effect to them. If it had been the purpose of the legislature that the will of any woman should be revoked by her subsequent marriage, it could have readily expressed that purpose in apt words, as has been done by the Wills Act of England, 1 Vict., c. 26, the eighteenth section of which provides that: " Every will made by a man or woman shall be revoked by his or her marriage." The same provision is found in the statutes of many states in this country. Instead of so doing, however, the legislature of this state has limited this result to a will executed by an unmarried woman, in language which gives no opportunity for construction. To hold that a will executed by a married woman will, upon a subsequent marriage by her, be attended with the same result as that executed by an unmarried woman, would be to interpolate into the statute words that the legislature has industriously omitted. The provision of section 1300 is the same as section 13 of the Wills Act of 1850 (Stats. of 1850, p. 178), and was evidently taken from the Revised Statutes of New York; and in that state the precise question here presented has been determined in accordance with this opinion. (*In re Burton's Will*, 25 N. Y Supp. 824. See, also, *Kaufmann's Will*, 131 N. Y. 620.)

Section 1298 of the Civil Code has no application. The conditions required by this section are that the testator shall not only have married, but shall also have issue of such marriage, in order to a revocation of his will.

The adoption of a stranger in blood is not the issue of the marriage, and cannot be treated as its equivalent. (*Davis* v. *Fogle,* 124 Ind. 41.) Section 1299 is by its terms limited to a survival of the testator by the " wife," whereas in the present case it is the wife who has died.

The judgment denying probate to the will is reversed.

GAROUTTE, J., VAN FLEET, J., and McFARLAND, J., concurred.

Rehearing denied.