39 So.2d 574

**PARKER v. FOREMAN.**
**4 Div. 525.**

Supreme Court of Alabama.
March 24, 1949.

C. L. Rowe, of Elba, for appellant.

W. R. Martin, of Ozark, for appellee.

SIMPSON, Justice.

Mrs. Nancy Ann Leonard Andrews Foreman, while married to J. W. Andrews, from whom she was subsequently divorced, made a will devising all of her property to her sister, Mrs. Lula Parker, the appellant, except Item 2nd of said will that recited:

"Inasmuch as my husband, J. W. Andrews, has left me and is no longer living with me, it is my desire that he share not in any wise in any of my property other than the debts which he now owes. me; in other words, in order that this will may not be construed that I overlooked him in the making of the same, I do hereby give, will, devise and bequeath unto my husband, J. W. Andrews, the debts he now owes me, this to be in lieu of any other portion of my estate of any sort whatsoever."

This will was duly executed December 27, 1939, and thereafter testatrix, having become divorced from Andrews, married appellee, J. M. Foreman. She died during this last coverture and the single question presented is, did her second marriage revoke her ante-nuptial will made while married to her former husband. The issue arose betwen Mrs. Parker, who presented the will for probate, and Mr. Foreman, who contested on the alleged ground that his intermarriage with testatrix revoked her previous will because of § 9, Title 61, Code 1940, which provides: "If, after the making of a will by an unmarried woman, she marries, the marriage operates as a revocation of the will."

Although the quoted section clearly and specifically limits such revocation to wills made by an unmarried woman, it is the appellee's contention, which prevailed in the lower court, that the ante-nuptial will of a married woman likewise stands revoked under the statute by her subsequent marriage.

The statute has come to us unchanged from the Code of 1852 and as far as we can find has never before been under re-

view by this court, but we do not think it can be accorded the interpretation contended for. Certain well-recognized canons of construction of necessity lead to such result.

■ a. The right to dispose of property by will is not a natural one and may properly be regulated and restricted by the legislature; and the mode of its execution, the manner of its revocation, and the class of persons who may make a will, and what changes in the personal status of such persons after its execution shall operate as a revocation or be sufficient reasons for denying it probate, are all matters within and committed to legislative competency. Wills, Dig. Key No. Series 1; In re Berger's Estate, 198 Cal. 103, 243 P. 862, 863; In re Comassi's Estate, 107 Cal. 1, 40 P. 15, 17, 28 L.R.A. 414; Barnett v. Bellows, 315 Mo. 1100, 287 S.W. 604; Hibberd v. Trask, 160 Ind. 498, 67 N.E. 179; Phillips v. Phillips, 213 Ala. 27(1), 104 So. 234.

■ b. Statutes, such as the one under review, are in derogation of the general power to make a will, are in the nature of exceptions thereto, and must be accorded a strict construction, and no obtrusion to include a class not clearly comprehended therein will be recognized or permitted. Hibberd v. Trask, supra; 68 C.J. 839, note 33a.

■ c. In considering the scope of its operation, it is not for the courts to pronounce what should or ought to be the status declared by an act, but to confine consideration to the statute itself to determine whether the condition is within the conditions named and when the language is clear, will not search for a reason to enlarge or improve it. " * * * statutes do not depend upon reason for their force and vigor. It is sufficient that the Legislature enacted the statute and that it violates no constitutional restrictions. * * *" Barnett v. Bellows, supra, 315 Mo. 1100, 287 S.W. 604, 605; In re Berger's Estate, supra; Matter of Mc-Larney's Will, 153 N.Y. 416, 47 N.E. 817, 60 Am.St.Rep. 664.

■ When Mrs. Foreman made her will, manifestly she was not within the influence of the statute. She was a married woman and fully competent to dispose of her separate property by will. Code 1940, Title 34, § 78. The class of persons whose wills are deemed to be revoked by subsequent marriage under § 9, supra, are women who have made wills while unmarried, that is, one without a husband, whether single by widowhood or by never having been married. It will be observed that the language of the statute is that if, after the making of a will by an unmarried woman, she shall marry, the will is deemed revoked by such marriage. There is no possible scope for any other construction and no reason for the court, in construing the section, to change its evident meaning or interpolate words not found within it. It is not a marriage of every woman which operates under the section to revoke a will previously made. It is where the will has been made by an unmarried woman that such revocation occurs.

Careful examination of the reported cases in other jurisdictions discloses that this interpretation has been unanimously accorded similar statutes, as is noted in the recent edition of Page on Wills, Vol. 1, p. 952, § 518, from which we quote:

"If the statute provides in effect that a will shall be revoked by a subsequent marriage, the will of a married woman is revoked if her husband dies after she had made her will, or is divorced, and subsequently she remarries.

"If the statute provides that the will of an 'unmarried woman' is revoked by a subsequent marriage, the will of a widow which is made after the death of her first husband is revoked if she remarries thereafter; but a will which is made by a married woman during coverture is not revoked by her later marriage after the death of her husband, or after divorce."

A leading case is the Comassi case, above cited, which fully expresses our view:

"It is as useless to conjecture the motives that may have governed the legislature in singling out an unmarried woman as the only person whose will shall be affected by her subsequent marriage, as it is to

conjecture why there should be a difference in the effect of a subsequent marriage upon a will executed by an unmarried man and upon one executed by an unmarried woman. It has conferred upon each the same ability to make a will after marriage as before, and a woman can, immediately after her marriage, make a will identical with the one made by her before her marriage. The legislature has, however, made these distinctions, and courts have no alternative except to give effect to them. If it had been the purpose of the legislature that the will of any woman should be revoked by her subsequent marriage, it could have readily expressed that purpose in apt words, as has been done by the wills act of England (1 Vict. c. 26), the eighteenth section of which provides that 'every will made by a man or woman shall be revoked by his or her marriage.' The same provision is found in the statutes of many states in this country. Instead of so doing, however, the legislature of this state has limited this result to a will executed by an unmarried woman, in language which gives no opportunity for construction. To hold that a will executed by a married woman will, upon her subsequent marriage, be attended with the same result as that executed by an unmarried woman, would be to interpolate into the statute words that the legislature has industriously omitted. * * *" 107 Cal. 1, 40 P. 17.

And so must we conclude likewise. If the legislature had intended that ante-nuptial wills of all women shall be deemed revoked on subsequent marriage, it would have been a simple matter to have said so and the act should have so stated.

We notice that the California legislature, in order to eliminate this manifest discrimination between wills of unmarried and married women, in 1905 amended the original act, Civ.Code, § 1300, "by substituting the words 'executed by a woman' for the words 'executed by an unmarried woman.'" Berger's case, supra, 198 Cal. 103, 243 P. 863.

The result here attained is sustained by the authorities. Page on Wills, Vol. 1, p. 952, § 518; 68 C.J. 838, § 538; 57 Am.Jur., p. 365, § 527; In re Estate of Comassi, supra; Matter of McLarney, supra; Matter of Burton's Will, 4 Misc. 512, 25 N.Y.S. 824; Hibberd v. Trask, supra.

The cases cited to sustain the contrary contention are without application, inasmuch as they are from jurisdictions which either have no statute regulating the subject or where existing statutes contain language differing materially, as the North Carolina case of Means v. Ury, 141 N.C. 248, 53 S.E. 850, where the statute under consideration provided that "all wills shall be revoked by a subsequent marriage of the maker," etc. Revisal 1905, § 3116.

It is also insisted that there has been a revocation by "operation of law." The contention is based upon the common law doctrine of an implied revocation by reason of changes in the family status or domestic relations of the testatrix whereby the law would presume an intention to change or revoke the will on account of new moral duties and obligations accruing to her by her marriage subsequent to making the will. This doctrine, borrowed from the civil law and recognized by both the common law and the ecclesiastical courts of England, has been recognized in some jurisdictions where not changed or abrogated by statute. Page on Wills, supra, pp. 929 et seq., §§ 507 et seq.; 57 Am.Jur. 362, § 521.

■ However, "there is no scope for the application of the doctrine where the statutory method of revocation is exclusive by specific terms of the statute." 57 Am. Jur. 363, § 522.

■ Such latter status is that prevailing in Alabama by reason of § 26, Title 61, Code 1940, which has been unchanged since originally adopted in the Code of 1852, and sets out the exclusive means, with the exceptions therein noted, by which the revocation of a will can only be effectuated. Franklin v. Bogue, 245 Ala. 379, 383(2), 17 So.2d 405.

It therefore results that the will cannot be adjudged revoked on the stated ground, so the decree of the lower court was laid in error.

Reversed and remanded.

BROWN, FOSTER, LIVINGSTON, LAWSON, and STAKELY, JJ., concur.