66 N.J. Super. 590 (1961)
169 A.2d 722
GERTRUDE B. SHELDON, EXECUTRIX UNDER THE WILL OF JOHN J. SHELDON, DECEASED, PLAINTIFF,
v.
ELVIRA DENNIS SHELDON, JOHN J. SHELDON, JR. AND ROSELLA R. SHELDON, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided March 30, 1961.
*591 Mr. Joseph P. Dallanegra, attorney for plaintiff.
Mr. Abe W. Wasserman, attorney for defendant Elvira Dennis Sheldon.
Messrs. Camarata and Colonna, attorneys for defendant Rosella R. Sheldon (Mr. Ronald Reichstein, appearing).
PINDAR, J.S.C.
Gertrude B. Sheldon, as executrix under the will of John J. Sheldon, deceased, files this complaint for judicial construction and instructions. Defendants Elvira Dennis Sheldon, John J. Sheldon, Jr., and Rosella R. Sheldon are respectively the widow, the son, and the former wife of testator.
By virtue of orders entered heretofore collateral issues have been concluded and are not now involved.
The matters sub judice will be stated: (a) should the will of testator be construed to the effect that he died intestate as to specific real estate designated as 6 Gates Avenue, Roseland, New Jersey, and in that event inherited by the said son, subject to his said widow's right of dower, or (b) should the said former wife of testator take the aforesaid *592 real property under the will? A clear understanding of the contra issues will be manifest by a full statement of the factual circumstances and by reference to the pertinent provisions of the testament hereafter.
Testator and Rosella were married in August 1938 and became the parents of John, Jr. On December 30, 1943 testator executed his will. Thereafter, on May 15, 1957, testator divorced Rosella, and a judgment of divorce became final August 16, 1957. During coverture testator was the sole owner of the aforementioned real property. In the manner of a consent property settlement in the matrimonial proceedings testator (plaintiff therein) was ordered to pay Rosella (defendant therein) $6,000. An excerpt from the order therefor follows:
"It is further ORDERED that the plaintiff, (John J. Sheldon) pay to the defendant (Rosella Sheldon) on or before August 26, 1957, $6,000.00 in full payment of all of her right, title and interest in and to the premises known as No. 6 Gates Avenue, Roseland, New Jersey, which premises are more particularly described in Deed Book T96-61, and that until said sum of $6,000.00 has been paid the plaintiff shall not encumber said premises without the consent of the defendant."
The payment to Rosella was accomplished by the procurement of moneys secured by a mortgage on the aforesaid premises given to testator's mother, the plaintiff herein. At the time of payment to, and receipt by, Rosella, she on August 16, 1957 executed a form of quitclaim deed which, in effect, conveyed her full interest in the subject real estate. In addition, on August 16, 1957 Rosella executed her general release of all claims, including those of her heirs, against testator and his heirs "from the beginning of the world to the day of the date of these presents."
On August 23, 1957 testator married Elvira, who became his widow upon his death on October 29, 1959. Testator's son was his only surviving heir. It is noticed that on the date of testator's death his former marriage to Rosella had been dissolved about 26 1/2 months.
*593 The determined testacy or intestacy as affecting the subject real estate will be dispositive of the issues sub judice. Thus, pertinent portions of the questioned will are produced as follows:
"THIRD: I order and direct my executrix and trustee hereinafter named to sell my home at 6 Gates Avenue, Roseland, New Jersey, as soon as conveniently possible after my decease, with the proviso, however, that my said executrix may, in her sole and unrestricted discretion, sell said property at public or private sale at such time and upon such terms and conditions as she may deem proper or opportune and I hereby authorize and empower my executrix and trustee hereinafter named to execute, acknowledge and deliver all proper or convenient writings, deeds of covenants and transfer therefor, it being my intention to reduce this property to personalty as soon as possible and the net proceeds derived from the sale of said house at 6 Gates Avenue, Roseland, New Jersey, to be divided equally as follows:
(A) One-half of the net proceeds derived from the sale of said property I give and bequeath unto my wife, Rosella R. Sheldon, to her own use forever.
(B) The other one-half of the net proceeds derived from said sale I desire blended with the rest and residue of the remainder of my estate for the benefit of my son, John J. Sheldon, Jr., as hereinafter provided."
Upon a review and consideration of the first portion of paragraph Third it is concluded and construed that the named executrix and trustee is authorized and empowered to sell the aforementioned real estate, conveniently and with sole and unrestricted discretion at a public or private sale at such time, and upon such terms and conditions deemed by her proper or opportune, with authority to execute all necessary documents therefor, and in that manner to reduce said property to personalty. This conclusion is inescapably within the authorization entrusted to plaintiff by virtue of testator's will to exercise the heretofore related power of sale. In that respect, no consideration of N.J.S. 3A:16-3 is necessary.
Succinctly, on the issues now raised, the court will consider the language of subparagraphs (A) and (B) of paragraph Third in the light of the developed circumstances.
*594 It is noticed that decedent on the date of the will  December 3, 1943  was apparently happily married to Rosella and then mindful of the objects of his bounty. That is evidently so because of the expressed intention that upon sale the subject real estate was to be converted from real property to personalty and distributed to Rosella and John Jr., equally. But can that be said to be the appropriate construction now in view of the disclosed circumstances of the deed and the release which followed the dissolved marital relationship? I believe not. Does not the payment of $6,000 to Rosella, together with her deed and release, give good cause to declare a testamentary failure of the disputed share of Rosella in the proceeds from the sale of the subject real estate? I believe so.
Although it must be acknowledged that a bequest or devise to one described as "my wife," who is also named, is not revoked by the fact of a subsequent judgment of divorce, it is noticed that in the cases so holding the court was faced only with the simple problem of construing a will wherein the use of the descriptive words involved were in contradistinction to the facts herein considered  the executed deed and release.
In the case of In re Santelli, 28 N.J. 331 (1958), Justice Francis produced an exceedingly illuminating review of the New Jersey law on the subject matter of common law and statutory revocation of a testamentary document. There the court considered as an initial problem whether or not marriage impliedly revoked an antenuptial will, and held negatively. At page 339 of 28 N.J. the court said:
"Study of the English common and statutory law in relation to our Wills Act of 1795 and the 1824 supplement renders it virtually an inescapable conclusion that the Legislature was acutely aware of the problems involved and intended to act with respect to them. This is particularly true of the doctrine of implied revocation of antenuptial wills. There can be no doubt that the lawmakers brought into our statutory law the basic common law and clarified and liberalized it [judged by then existing standards]."
*595 And, at page 342 of 28 N.J. the court further said:
"Additional significance is justifiably attached to the 1824 act. We have pointed out that section 2 of the Wills Act of 1795 did not embrace the words of the English Statute of Frauds which caused the controversy as to whether the aim of Parliament was to wipe out the implied revocation doctrine. This omission warrants the conclusion that the motive was to retain the common-law rule. But in 1824 the common law, as modified by the de-emphasis of the marriage element of the doctrine, became statutory. Accordingly, added vigor was given to the revocatory section of the Wills Act (now N.J.S. 3A:3-3) as the exclusive legal mandate in the field, ruling out revocation of written wills except by the methods prescribed. Cf. In re D'Agostino, 9 N.J. Super. 230, 232 (App. Div. 1950)."
In Carlo v. The Okonite-Callender Cable Co., 3 N.J. 253 (1949), it was held that to effectuate any change in common law, legislative intent to do so must be clearly and plainly expressed.
In Kuzma v. Millinery Workers, etc., Local 24, 27 N.J. Super. 579 (App. Div. 1953), the court held that a statute will not be construed as taking away a common-law right existing at date of its enactment, unless it be found that preexisting right is so repugnant to statute that survival of such right would in effect deprive subsequent statute of its efficacy and render its provisions nugatory.
The provisions of N.J.S. 3A:3-3 declaring the statutory methods of revoking written wills should only be given the effect of legislative enactment for expressed revocation and not effective derogation of an implied revocation. The indubitable implication of revocatory effect in view of the situation at bar  the unimpeachable quitclaim deed and general release  cannot be considered repugnant to the statute or in deprivation of its efficacy, or as negating its provisions.
In In re Shack's Will, 207 Misc. 953, 140 N.Y.S.2d 744 (Surr. Ct. 1955) the spouse as here had given a release. The court, at page 745 of 140 N.Y.S.2d, said:
*596 "There is no question raised with respect to the facts or as to the validity of the property settlement agreement. The agreement recites valuable consideration and division of property between the parties. The agreement is wholly inconsistent with the terms and nature of the bequest made for respondent under paragraph II of testator's will. The subsequent divorce obtained by respondent and her remarriage leaves no doubt that she intended to terminate all her marital rights and relations with testator."
The language of subparagraphs (A) and (B) of paragraph Third, when read together, evidences clear and convincing meaning and intention of the testator that Rosella and John Jr. share equally the net proceeds from the sale of the particular real estate. It is inevitable that the apparent means provided by the testator to accomplish such contemplated equal division would be defeated if the contention of Rosella prevails. In such event John Jr. would not receive an equal "other one-half share," whereas Rosella by the payment of $6,000 has received her equal "one-half share" under the property settlement order. Moreover, the share of John Jr. is now charged with the share of the dower interest due Elvira, which is yet to be admeasured. Lastly, it is inescapable that the instruments of conveyance and release implanted in the mind of testator, and Rosella as well, that the provision of subparagraph (A) entitling Rosella to share thereafter in the estate of testator was extinguished, terminated and of no effect.
In the light of the foregoing it is upon judicial construction concluded that the testamentary bequest to Rosella ought not to stand and should be excluded by virtue of an effectual implied revocation of the testament here being reviewed, but only to the extent of that portion of testator's will provisioned in subparagraph (A) of paragraph Third; that as to the aforesaid portion so revoked the testator died intestate, requiring distribution or descent thereof according to law, and that plaintiff as executrix and trustee is instructed to act in accordance with the aforestated conclusions.
Counsel should present conformable order.