599 P.2d 237

**Chester R. CAPRIOTTI, Appellant,**

v.

**Judy MILLSAPS, Appellee.**

**No. 1 CA–CIV 4063.**

Court of Appeals of Arizona,
Division 1,
Department B.

May 10, 1979.

Rehearing Denied July 11, 1979.

Review Denied Sept. 6, 1979.

282

A. Elwyn Larson and Lee V. Bakunin, Phoenix, for appellant.

L. Dennis Marlowe, Tempe, for appellee.

## OPINION

JACOBSON, Judge.

The sole issue raised by this appeal is whether a will executed prior to January 1, 1974[1] by one spouse in favor of the other spouse is revoked by the subsequent divorce of the parties coupled with a division of their property.

This appeal arose out of petitions filed by appellee, Judy Millsaps (Judy), for construction of a will and declaratory judgment to determine the rights of the parties in the probate of the estate of her mother, Betty Jeanne Capriotti (Betty Jeanne). These petitions were resisted by appellant, Chester R. Capriotti (Chester), who had previously admitted to probate[2] a holographic will of his former wife, Betty Jeanne, under which he was the sole beneficiary.

Upon cross-motions for summary judgment, the trial court declared that Chester took nothing under the will and that Betty Jeanne's estate passed to Judy, holding that a subsequent divorce of the parties as a matter of law worked an implied revocation of the will. Chester has appealed.

The facts are not in dispute. Chester and Betty Jeanne were married in 1960. Both had previously been married and divorced and Judy was Betty Jeanne's daughter by a prior marriage. Chester and Betty Jeanne had no children. On June 18, 1969, Betty Jeanne executed a holographic will leaving her entire estate to her then husband, Chester.

On July 2, 1972, Betty Jeanne and Chester were divorced following a contested tri-

---

1. A.R.S. § 14–2508, effective January 1, 1974, provides for an automatic revocation of a devise to a former spouse upon dissolution of the marriage. This statute by its terms is not applicable to the will in question here.

2. The will had previously been the subject of a will contest involving Chester and Judy. However, the issues in that contest were limited to a determination of the execution of the will, and the uninfluenced testamentary capacity of Betty Jeanne and did not resolve the issues presented here.

al. By the decree of divorce, all of the parties' rather substantial property (with the exception of a life insurance policy on Betty Jeanne's life which subsequently lapsed for failure to pay premiums) was divided and Chester was ordered to make alimony payments. Following the divorce, the June 18, 1969 will was in Chester's possession.

Betty Jeanne died on June 23, 1973, without formally revoking the June 18, 1969 will or executing a new will.

On appeal, Judy raises several contentions, seeking to uphold the granting of summary judgment in her favor. One of these we deem dispositive, that is, that the subsequent divorce of the parties coupled with a complete division of the parties' property causes an implied revocation of the will.

Chester, on appeal, agrees that this issue is dispositive, as all other issues raised in support of the trial court's judgment would have required a factual determination by the trial court which would be improper under a summary judgment. However, Chester does contend that the common law doctrine of implied revocation of a testamentary bequest does not exist in Arizona. In particular, Chester argues that the failure to prove that Betty Jeanne ever revoked her will in accordance with A.R.S. § 14–126 [3] requires that the holographic will be given effect.

Former A.R.S. § 14–126 provides:

"A will or any clause or devise therein may be revoked only by:

"1. A subsequent will, codicil or declaration in writing executed with the same formalities as the will revoked.

"2. Destruction, cancellation or obliteration of the will by the testator or caused by him to be done in his presence."

In our opinion, this case is controlled by determination of whether the common law doctrine of implied revocation applies in Arizona at all, and if so, whether a divorce accompanied by a complete settlement of property rights operates as an implied revocation of a bequest to a former spouse.

The common law doctrine of implied revocation of a testamentary bequest is "founded upon the reasonable presumption of an alteration of the testator's mind, arising from circumstances since the making of the will, producing a change in his previous obligations and duties . . . .. There is not, perhaps any code of civilized jurisprudence in which the doctrine of implied revocation does not exist and apply when the occurrence of new social relations and moral duties raises a necessary presumption of a change of intention in the testator." 4 Kent's Commentaries 421–22.

Those circumstances arising after the making of a will which were recognized at common law as invoking the doctrine of implied revocation were the marriage of a woman, 1 Page on Wills § 516 (3d ed. 1941), and the marriage of a man and the birth of a posthumous or pretermitted child. *See Christopher v. Christopher*, 21 Eng.Rep. 343 (1771).

The answers to the question of whether the common law doctrine of implied revocation survives the codification of those grounds recognized at common law and the adoption of statutory methods of revoking a will are in conflict. Some courts hold that the statutory grounds are exclusive and "do away with the doctrine of implied revocation." *In re Estate of Comassi*, 107 Cal. 1, 5, 40 P. 15, 16 (1895). *See also Jones's Estate*, 211 Pa. 364, 60 A. 915 (1905); *Darrow Estate*, 164 Pa.Super. 25, 63 A.2d 458 (1949).

However, other courts, faced with similar statutory provisions have held that such statutes "should only be given the effect of legislative enactment for *expressed revocation* and not effective derogation of an *implied revocation.*" *Sheldon v. Sheldon*, 66 N.J.Super. 590, 595, 169 A.2d 722, 725 (1961) (emphasis in original); *accord, Luff v. Luff,*

---

**3.** All citations in this opinion, except as otherwise indicated, are as they existed prior to January 1, 1974.

123 U.S.App.D.C. 251, 359 F.2d 235 (D.C. Cir. 1966); *Rankin v. McDearmon*, 38 Tenn. App. 160, 270 S.W.2d 660 (1953). For a collection of cases on both sides of the subject, *see* Annot., *Divorce or Annulment as Affecting Will Previously Executed by Husband or Wife*, 71 A.L.R.3d 1297 (1976).

The question in Arizona is an open one.[4] However, we start with the proposition in Arizona that "[t]he common law only so far as it is . . . not repugnant to or inconsistent with the constitution of the United States or the constitution or laws of this state . . . is adopted and shall be the rule of decision in all courts of this state." A.R.S. § 1–201. Is the common law doctrine of implied revocation "repugnant to or inconsistent with" the statutory scheme dealing with revocation of wills? We do not believe so.

We note that the Arizona statutory scheme has in essence codified those grounds recognized at common law which operated as an implied revocation of a will, that is, the pretermitted child (A.R.S. § 14–131), the posthumous child (A.R.S. § 14–132), and the subsequent marriage of the testator (A.R.S. § 14–134). These codified pronouncements, however, expanded upon and avoided the problems inherent in the common law grounds of implied revocation. For example, at common law the subsequent marriage of a woman revoked a prior will on the theory that by reason of the marriage, her identity became so merged with that of her husband and his control over her property became so pervasive that she lost the capacity to make a will. 3 Holdsworth, History of English Law 409, et seq. (2d ed. 1909). Thus, insofar as the statutory provisions are inconsistent with the grounds recognized at common law to invoke the doctrine of implied revocation (and the theories underlying that doctrine), obviously the statutory scheme controls. However, it does not necessarily follow that the simple codification and changing of grounds recognized at common law means that the rationale giving rise to those common law principles initially is completely abrogated.

As previously indicated, the common law doctrine of implied revocation was based upon the principle that where circumstances occur after the making of the will which are of such a nature as to produce a change in the testator's social and moral obligations, a corresponding change in the testator's intention was presumed. The same can be said of the underlying rationale of the statutory provisions altering the testator's will in the absence of acts by the testator himself. Thus, in 1901, when the predecessors of A.R.S. §§ 14–131, 14–132 and 14–134 found their way into our statutory scheme, the legislature must have recognized that the change in circumstances caused by the pretermitted or posthumous child or the subsequent marriage of the will maker, justified the changing of the disposition made by a solemnly executed document. Likewise, in 1973, the legislature recognized that the subsequent divorce of the will maker was such a change in circumstances as to revoke a bequest to the divorced spouse.

We therefore find that the common law rationale underlying the doctrine of implied revocation is not only not inconsistent with the statutory grounds for changing a will, but is completely compatible with that statutory scheme. They can and should co-exist as compatible systems to adjudicate the rights of litigants. Simply because the legislature did not act until 1973 to recognize that divorce was such a change in circumstances as to require a revocation of a bequest to the divorced spouse, does not mean that the common law cannot consider whether a divorce in 1972 should have the same effect.

We turn then to a determination of whether the developing common law recognizes that a divorce accompanied by a complete property settlement is such a change in circumstances as to operate as an implied revocation of a bequest by one divorced

---

4. By implication the doctrine of revocation by operation of law has been recognized in Arizona. *See In re Estate of Griswold*, 13 Ariz.App. 218, 475 P.2d 508 (1970).

spouse to the other. This issue, like most emerging issues at common law, has not found uniformity in its resolution by the courts.[5] However, it appears that the majority of cases which have considered this issue have concluded that a divorce accompanied by a division of the property of the parties operates in some manner to effect an implied revocation at common law of a bequest from one divorced spouse to the other.[6] The rationale for this rule is stated in *Johnston v. Laird*, 48 Wyo. 532, 544, 52 P.2d 1219, 1222 (1935):

"The things which naturally prompt a man to make a will in favor of his wife are his regard and affection for her and the obligation which he may feel to provide for her comfort and support after he has gone. These elements cease to exist when the parties separate."

We believe the better application of the rule is expressed in *Caswell v. Kent*, 158 Me. 493, 496, 186 A.2d 581, 582–583 (1962):

"The majority rule clearly rests on the assumption based upon common knowledge and experience that it is so rare and so unusual for a testator under these circumstances [divorce and division of property] to desire or intend that his divorced spouse should benefit further under his will, that it is not improper or unreasonable to require that such a testator make that extraordinary desire and intention manifest by a formal republication of his will or by the execution of a new will."

In this case, Betty Jeanne and Chester were divorced after a hard fought battle over property and alimony. The will under which Chester claims benefit remained in his possession following the divorce. Under these circumstances we do not hesitate to hold that the parties' divorce, coupled with a decree forged in the courtroom which made a complete division of their property,

operated as a matter of law to conclusively revoke a bequest by Betty Jeanne to Chester under a will executed in happier times.

The judgment of the trial court is affirmed.

SCHROEDER, P. J., and OGG, C. J., concur.

---

5. For example, *compare Luff v. Luff, supra* (holding a divorce coupled with a property settlement conclusively presumed to cause a revocation) *with In re Mercure Estate*, 391 Mich. 443, 216 N.W.2d 914 (1974) (holding that divorce coupled with a property settlement raises only rebuttable presumption of revocation).

6. In this context, A.R.S. § 14–2508, effective January 1, 1974, could be considered as a codification of the common law on this subject with the modification that divorce alone is sufficient to effect the revocation.