This will contest case presents a single issue: The propriety of the trial court's grant of contestant's motion for summary judgment based solely on movant's supportive affidavit by the late Dr. Griggs's lawyer stating that in 1973 he prepared, and Dr. Griggs executed, a "new" will (now lost), revoking the 1972 will offered for probate by proponents.
Proponents (Appellants) are a granddaughter and a great granddaughter of Dr. J.C. Griggs, who died a widower December 8, 1973. The contestant (Appellee) is the late Dr. Griggs's only child. *Page 906 
This case involves multiple efforts on behalf of Appellants to prove that their deceased kinsman died testate — favoring them as beneficiaries — as opposed to having died intestate, allowing the Appellee to take the entire intestacy estate. Appellants began by filing for probate a 1972 will which was contested by Appellee and moved to the circuit court. The circuit court ruled adversely to Appellants in its February 20, 1979, order, finding that the 1972 will had been revoked by a subsequent duly executed will, which order of judgment concluded:
 ". . . without prejudice to any proceedings which the proponents or any other proper person might institute in the Probate Court to establish the contents of the subsequent will."
Immediately thereafter, Appellants sought to probate "the subsequent [lost] will" in the probate court. Again, the Appellee moved the contest to the circuit court; and, again, on June 20, 1980, the court granted summary judgment adversely to Appellants, finding that, "There's no possibility that the proponents will be able to satisfy the requirements of establishing a lost will (Barksdale v. Pendergrass, 294 Ala. 526, 319 So.2d 267 (1975))." Appellants now appeal from the June 20, 1980, order and state affirmatively in their brief that the only issue presented is the propriety of the trial court's February 20, 1979, order granting summary judgment with respect to the 1972 will.
Disclaiming any precedential value of our procedural holding, because of the sui generis posture of these proceedings, we have elected to construe these attempts to probate various wills and the contests thereof as a single case, thereby construing the February 20, 1979, order as interlocutory, thus treating the June 20, 1980, order as the final judgment. Therefore, we will treat the appeal as timely filed.
Because our resolution of the dispositive issue here presented turns on the legal sufficiency of Mr. Hardy B. Jackson's affidavit in support of the contestant's motion for summary judgment with respect to the revocation of the 1972 will, we now set forth the pertinent portions of that testimony:
 "I prepared a will for Dr. Griggs which was executed on September 4, 1972. After the execution of the September 4, 1972 will, Dr. Griggs asked me to prepare another will for him. During the late summer of 1973 (I am not sure of the date), Dr. Griggs executed a new will in my presence. The will was in writing and was signed by the testator, Dr. J.C. Griggs, in my presence. The will was attested to by two witnesses whose names were subscribed to the will in the presence of the testator, Dr. J.C. Griggs. Finally, this will which Dr. Griggs executed in the summer of 1973, contained a revocation clause, i.e., it contained a clause revoking all papers of a testamentary nature which were heretofore executed by the testator."
The respective contentions of the parties are summarized in Appellee's brief:
 "The testimony of Hardy B. Jackson clearly satisfies all of the requirements for proof of revocation by subsequent instrument, as set forth in ALA. CODE, § 43-1-33 (1975) and in [Allan v. Allan, 353 So.2d 1157 (Ala. 1977)]. Jackson testified that the 1973 will was in writing, that it was signed by the testator, Dr. J.C. Griggs, and that it was attested to by two witnesses who subscribed their names to the will in the presence of the testator.
 "In their brief, the Appellants contend that the affidavit of Hardy B. Jackson was insufficient to prove the valid execution of a subsequent will. It is their contention that, in a will contest, the will must be proved by both subscribing witnesses or their absence accounted for. With regard to a typical will contest case, the appellee freely admits that this is a substantially correct statement of the law. However, there is one exception to this rule.
 "The rule requiring that the will be proved by both subscribing witnesses (or their absence accounted for) is not applicable if the will to be proved is an allegedly lost will." *Page 907 
The trial court's "Order of Judgment," after summarizing Mr. Jackson's testimony, recites in part:
 "Since the proponents of the will have submitted no opposing affidavits, the court has no alternative but to consider the evidence (the testimony by affidavit of Hardy B. Jackson) to be uncontroverted. Thus, since the uncontroverted evidence indicates that another will was properly executed after the execution of the September 4, 1972, will, the will is deemed by law to have been revoked and cannot be admitted to probate.
 "The proponents assert that the matter of proving the contents of a lost will is a question for jury deliberation. However, that issue is not now before this Court. This proceeding is not one brought to establish the contents of a lost will. The only issue before this Court is the validity of the September 4, 1972, will."
Code 1975, § 43-1-30, sets out the requisites for a valid will:
 "No will is effectual to pass real or personal property, except as otherwise provided in this article, unless the same is in writing signed by the testator or some person in his presence, and by his direction, and attested by at least two witnesses, who must subscribe their names thereto in the presence of the testator."
§ 43-1-44 prescribes the mode of proving a will offered for probate, which, in pertinent part, reads:
 "(a) Wills offered for probate . . . must be proved by one or more of the subscribing witnesses, or if they be dead, insane or out of the state or have become incompetent since the attestation, then by the proof of the handwriting of the testator, and that of at least one of the witnesses to the will. Where no contest is filed, the testimony of only one attesting witness is sufficient.
 "(b) If none of the subscribing witnesses to such will are produced, their insanity, death, subsequent incompetency or absence from the state must be satisfactorily shown before proof of the handwriting of the testator, or any of the subscribing witnesses, can be received; . . ."
As early as 1884, the demands of this statute — a codification of the common law — were relaxed in cases which attempted to establish and probate lost wills. In Skeggs v.Horton, 82 Ala. 352, 2 So. 110 (1886), the appellant argued that the law required two subscribing witnesses to prove the validity of a will and that a single witness could not prove a lost will. This Court disagreed citing the first appellate decision in the same case which held that a lost will may be established by the testimony of a "single witness, who read and remembers the contents of the will. . . ." Jaques v. Horton,76 Ala. 238 (1884). The lost will exception — itself a product of the common law — has been preserved and read into the statute by this Court's decisions, so that a "lost will may be established by the testimony of a single witness, who read it, or heard it read, and remembers its contents." Lovell v.Lovell, 270 Ala. 720, 121 So.2d 901 (1960); Martin v. Wagner,247 Ala. 591, 25 So.2d 409 (1946); Allen v. Scruggs, 190 Ala. 654,67 So. 301 (1914).
The exclusive methods by which wills may be revoked are set out in § 43-1-33:
 "Except in the cases provided in article 1 of this chapter, a will in writing can only be revoked by burning, tearing, cancelling or obliterating the same, with the intention of revoking it, by the testator himself, or by some person in his presence, and by his direction, or by some other will in writing, or some other writing subscribed by the testator, and attested as prescribed in section 43-1-30. When any will is burned, torn, cancelled or obliterated by any person other than the testator, his direction, and consent thereto and the fact of such burning, cancelling, tearing or obliteration must be proved by at least two witnesses."
Strict adherence to the requirements of this section is necessary to accomplish an effective revocation because "Section 26, Title 61, Code [§ 43-1-33], provides the only method by which a will can be revoked." Kelley v. Sutliff,257 Ala. 371, 59 So.2d 65 (1952); Parker v. Foreman, 252 Ala. 77, *Page 908 
39 So.2d 574 (1949). See Barker v. Bell, 46 Ala. 216 (1871). This standard of proof, therefore, has been consistently applied by this Court where a party asserts revocation of a will by a subsequent will. Allan v. Allan, 353 So.2d 1157 (Ala. 1977);Brooks v. Everett, 271 Ala. 354, 124 So.2d 105 (1960).
Appellee contends that the testimony of Hardy Jackson is sufficient to establish the validity of Dr. Griggs's lost will, despite a lack of any evidence of its contents, and thereby to revoke his prior will. Unquestionably, had the lost will to which Mr. Jackson's testimony alluded been offered for probate, the statement of facts contained in his affidavit would not
meet the requisites of the "lost will exception" to § 43-1-44. Our decisions involving the establishment of the validity of lost wills consistently hold that one of the requirements to be met is that the single testifying witness "remember the contents" of the lost will which he read or which was read to him. It must be understood, then, from the cases cited above that an essential element in the proof or establishment of a lost will is an assertion of a knowledge of the contents of the lost document.
It is conceded that human memory is not faultless and some latitude must be permitted when determining the contents of a lost will. We feel, however, that this has been adequately addressed by the Court:
 "In proving, to sufficiency, the contents of a lost instrument, it is not necessary to prove the words of the instrument; proof of the substance of the contents is all that is required." Allen v. Scruggs, supra, 190 Ala. at p. 659, 67 So. 301.
In the later case of Brooks v. Everett, supra, the "single witness" was the lawyer who drew up the lost will in question. While he could "not remember all the contents of the lost will," he did recall certain particular devises of real and personal property, and also recalled that the first paragraph of the will stated: "I do hereby revoke all testamentary dispositions by me heretofore made." Brooks, 271 Ala. at p. 357, 124 So.2d 105. The Court in Brooks restated the test for establishing a lost will (testimony of a single witness, who read it, or heard it read, and remembers its contents) and added that "proof of a lost instrument as a will is sufficient and the exact words need not be shown." Brooks, 271 Ala. at p. 359, 124 So.2d 105.
Mr. Jackson's affidavit, in which he verified the due execution of this later will and the fact that it contained a revocation clause, pointedly refrained from any comment as to the contents of the will. The provisions of §§ 43-1-30
(requirements for a valid will) and 43-1-33 (methods for revoking a will) contemplate "will-in-hand" situations which obviously supply the Court with the necessary contents of the will at issue. This Court has not allowed proof of the requisites of these two Code sections as to a lost will unless that proof is also sufficient to invoke the exception to §43-1-44 — the method of proving a will for probate and the only and ultimate end of proving the valid execution of any will.
The exception, which relaxes the requisite proof for probating a lost will, is in keeping with the public policy of this State in carrying out the last intent of the testator. Therefore, rather than being in furtherance of Dr. Griggs's intent to die testate, Appellee's construction of the lost will exception would act to the contrary in permitting proof of the mere execution of a lost will, without proof of its contents, to serve as a means of revoking a prior will, thus producing intestacy.
We recognize that Appellee's intent has never been to prove the contents of Dr. Griggs's lost will. Indeed, Appellee would have this Court extend the scope of the lost will exception so as to allow proof of the due execution of the lost will for the express purpose of rendering Dr. Griggs intestate. This we cannot do. Our decisions requiring proof of the contents of a lost will, or the substance thereof, in establishing the validity of the lost will, in their primary application, consistently prevent the outcome which Appellee seeks and *Page 909 
uphold this Court's preference for testacy over intestacy if at all possible.
As this Court has stated:
 "[It] is not to be presumed that the testator intended to die intestate as to any portion of his property, unless the contrary intention is so plain as to compel a different conclusion. Arrington v. Brown, 235 Ala. 196, 178 So. 218 [1938] . . ."
Baker v. Wright, 257 Ala. 697, 703, 60 So.2d 825 (1952). We find no evidence in the case before us to indicate any intention on the part of Dr. Griggs to die intestate. On the contrary, the evidence points to the single conclusion that Dr. Griggs's principal objective was the testamentary administration of his property according to his wishes.
The inherent evil in Appellee's position was discussed in Justice Mayfield's dissent in Bruce v. Sierra, 175 Ala. 517,57 So. 709 (1912), which held that a legally executed subsequent will revokes all prior wills without proof of the contents of the subsequent will. Justice Mayfield, in a strong dissent, stated that, as one of the authors of the statute (§ 43-1-33), he had never intended the construction placed on the statute by the majority decision. He went on to say:
 "The evil of the rule announced will be clearly shown in this case, if contestant is able to prove the execution of a second will. . . . [A]s the last will is lost and its contents are not proven, it cannot be probated, yet nevertheless it will revoke the first, and thus testatrix's will, whether expressed in one or two instruments, will be entirely defeated, and therefore, in law, she will have died intestate, and all the objects of her bounty will be entirely deprived of their property, or, at best, of the interest therein that testatrix intended that they should have.
 "I am wholly unable to understand the reason or the logic in any such holding. Instead of being a rule to preserve the rights of property, its necessary effect is to destroy such rights." Bruce v. Sierra, at pp. 531-532, 57 So. 709.
Because the post-Sierra cases, as noted above, have consistently required proof of at least the substance of the contents of a lost will, this Court has not rendered a decision which fulfills Justice Mayfield's dire prophecy; nor do we here.
Why, then, does this Court consistently uphold and apply this exception and permit less stringent standards to govern in cases seeking to establish lost wills? The question contains its answer: We are dealing with wills — those sacred documents whereby individuals may control the disposition of the estates they have spent their lifetimes building. Our recognition of the importance of the ultimate effect of the testamentary administration of a decedent's estate, as opposed to its passing under Alabama's descent and distribution statutes, led this Court to state that:
 "[C]ertain principles governing the construction of wills in this state are settled. They are:
 "(1) The intention of the testator is always the polestar in the construction of wills, and the cardinal rule is to give it effect if not prohibited by law.
 "(2) The intention of the testator may be ascertained not only by the writing itself, but from the light of attending facts and circumstances, and,
 "(3) In arriving at that intention, the court should consider the instrument as a whole."
First National Bank of Birmingham v. Klein, 285 Ala. 505, 508,234 So.2d 42, 45 (1970).
The importance of this principle was recognized as early as 1828 in Bell v. Hogan, 1 Stew. 536, and has been relied upon continuously and as recently as 1978, when Justice Shores stated: "In this state the cardinal rule in cases involving wills is the ascertainment of the intentions of the testator."City National Bank of Birmingham v. Andrews, 355 So.2d 341, 343
(Ala. 1978).
The lost will exception, then was developed in keeping with the public policy favoring the testamentary disposition of the decedent's estate. The beneficent purpose of the lost will exception is self-evident. To require strict compliance with the statutory *Page 910 
requisites of proof, where the document itself is lost, would defeat rather than enhance the public policy explicit in our law to effect the last intent of the deceased with respect to the disposition of his property. To effect that intent, then, the exception's field of operation must necessarily be limited to proof of the lost will for probate. Otherwise, the application of the exception to allow less than the statutory requisites of proof for the limited purpose of revoking a prior will would defeat the very purpose for which the exception exists.
This point could hardly be more dramatically illustrated than by the facts of the case at hand. Dr. Griggs had executed numerous wills during the last years of his life, each providing in various proportions for his granddaughter and great-granddaughter. To permit revocation by use of the lost will exception, in derogation of the statutory requisites for revocation, produces the one result least likely to carry out Dr. Griggs's intent: to die testate.
It is for this reason that the exception allowed for probating a lost will can not be read into a made an exception to the revocation statute. One who offers to prove a lost will for the purpose of revoking a former one must be prepared to live by the terms of the lost document; and what the law recognizes as an exception for the purpose of rendering an estate testate, the law cannot recognize as an exception for the limited purpose of revoking a will, thus rendering the estate intestate in derogation of the revocation statute.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, SHORES and BEATTY, JJ., concur.